| | | |
|---|---|---|
| ROBERT PETERSON and | ) | |
| LEIBUNDGUTH STORAGE & | ) | |
| VAN SERVICE, INC., | ) | |
| | ) | |
| Plaintiffs, | ) | No. 14 C 09851 |
| | ) | |
| v. | ) | Judge Edmond E. Chang |
| | ) | |
| VILLAGE OF DOWNERS GROVE, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

This case tests the extent to which a local government may restrict the display of commercial advertisements on privately-owned buildings. In 2005, the Village of Downers Grove, which sits about 25 miles west of Chicago, changed its rules on the display of commercial signs. Robert Peterson is the owner of Leibundguth Storage & Van Service, Inc., which has displayed several large signs identifying and advertising its business on the outside of its Downers Grove location for decades. Leibundguth says that these signs are an important source of business, but they run afoul of both the type and quantity restrictions of the amended sign ordinance. Peterson and Leibundguth seek a declaratory judgment that the ordinance violates the First and Fourteenth Amendments of the United States Constitution and Article I, Section 4 of the Illinois Constitution; a permanent

injunction against enforcing the ordinance; one dollar in nominal damages; and costs and attorney's fees.[1]

For its part, the Village has brought a counterclaim asking the Court to declare that the sign ordinance is valid and to order Plaintiffs to comply with their terms and pay any applicable fines. The Village now moves to dismiss the amended complaint, arguing that Plaintiffs are barred by certain Illinois statutes of limitations and lack standing to assert injury, and that the sign limitations are content-neutral, "time, place, and manner" restrictions allowed by the Constitution. For the reasons explained in this Opinion, the motion is denied in large part and granted only to dismiss Peterson as an individual plaintiff from the action.

## I. Background

All of the amended complaint's factual allegations must be accepted as true and reasonable inferences drawn in Plaintiffs' favor for purposes of this motion to dismiss. *Ashcroft v. al–Kidd*, 131 S.Ct. 2074, 2079 (2011). In any event, the operative facts in the amended complaint are not really in dispute.

## A. Leibundguth's Signs

Leibundguth is a licensed moving and storage business, owned solely by Robert Peterson since 1985. R. 10, Am. Compl. ¶¶ 10, 11, 13. For 80 years, Leibundguth has operated out of a warehouse located between Warren Avenue and the Metra commuter-railway tracks in the Village of Downers Grove. *Id.* ¶ 14. For the past 70 of those years, there has been a sign painted (with minor alterations

---

[1]Subject-matter jurisdiction is proper over the federal issue under 28 U.S.C. § 1331, with supplemental jurisdiction over the state-law claim under 28 U.S.C. § 1367(a).

along the way) directly onto the brick on the back of this building, reading "Leibundguth Storage and Van Service / Wheaton World Wide Movers," along with the company's phone number. *Id*. ¶¶ 1, 16. (Leibundguth contracts with Wheaton, a separate company, to provide long-distance moving. *Id*. ¶ 16.) The text is in large letters, colored black, grey, and red on a white background. Photograph at *Id*. ¶ 1. It looks like this:



The sign is 40 feet long, 10 feet high, and is directly visible to thousands of commuters riding by on Metra trains into and out of Chicago each day. *Id*. ¶¶ 16, 17.[2] It does not face a roadway and is not visible to any drivers. *Id*. ¶ 17. Plaintiffs assert that the sign is crucial for business, leading to approximately 12 to 15 potential customers per month who call having learned about the company from the sign. *Id*. ¶ 18. This volume generates between $40,000 and $60,000 annually, which translates to 15 to 20 percent of Leibundguth's revenue. *Id*

More signs are found on the wall on the front side of the building, facing the street. One sign, which is painted directly onto the brick on a white background, reads "Leibundguth Storage Van Service," along with the company phone number.

---

[2] Based on a quick look at Google Maps, the business appears to be around a half-mile from the Downers Grove Metra train station.

3

*Id.* ¶ 19. This sign measures 40 feet in length by 2 feet in height and has also been on the building for 70 years. *Id.* Hand-painted block letters attached on the other side of the front-facing wall spell out "Leibundguth Storage & Van Service," a display that measures about 19 feet by 2 feet. *Id.* ¶ 20. Those words have been on the building since at least 1971. *Id.* Directly beneath those words is a rectangular sign affixed to the building that advertises "Wheaton World Wide Moving," in place since 1987, when it replaced a previous sign bearing the former name of Wheaton World Wide Moving; that sign had hung there since the mid-1970s. *Id.* ¶ 21. Plaintiffs allege that these street-facing signs are important to identify Leibundguth, and its relationship with Wheaton World Wide Moving and its services, to passersby and customers. *Id.* ¶ 22.

## B. The Sign Ordinance

Unfortunately for Leibundguth, in May 2005, the Downers Grove Village Council amended the Village sign ordinance, reducing the amount of signage permitted and prohibiting certain types of signs altogether. *Id.* ¶ 26. (The amended complaint does not make clear what the relevant portions of the ordinance looked like prior to the 2005 amendment.) The amended ordinance's stated purpose is "to create a comprehensive but balanced system of sign regulations to promote effective communication and to prevent placement of signs that are potentially harmful to motorized and non-motorized traffic safety, property values, business opportunities and community appearance." R. 10-1, Sign Ord. § 9.010(A).

Towards those ends, the ordinance includes three specific restrictions at issue in this lawsuit. First, it prohibits "any sign painted directly on a wall, roof, or fence." *Id*. § 9.020(P). It also limits the "maximum allowable sign area" for each property to 1.5 square feet per linear foot of frontage (two square feet per linear foot if the building is set back more than 300 feet from the street), in no case to "exceed 300 square feet in total sign surface area." *Id*. § 9.050(A). Finally, "[e]ach business or property owner is allowed to display one wall sign per tenant frontage along a public roadway or drivable right-of-way." *Id*. § 9.050(C). Businesses and other properties in certain zones and the business district are exempted from these restrictions. *Id*. §§ 9.020(P); 9.050. Leibundguth is located one block outside the downtown business district and apparently does not fall into one of the other exempted areas. Am. Compl. ¶ 29.

Leibundguth's signs therefore violate the ordinance in a number of ways. The prohibition on signs painted directly onto walls makes the Metra-facing advertisement and the similar, smaller sign on one of the front walls unlawful in themselves. Am. Compl. ¶ 29. By Plaintiffs' calculation, the ordinance also only allows them 159 square feet for all of their signs (calculated at 1.5 square feet per linear foot of frontage, as the Leibundguth warehouse is not set back more than 300 feet from the street), far less than the 546 square feet of advertising they currently display. *Id*. ¶¶ 41, 42. Plaintiffs additionally interpret the "one wall sign per tenant frontage along a public roadway" requirement as prohibiting their sign facing the Metra tracks, as the Village Council and Zoning Board of Appeals has concluded

5

that the rail tracks do not qualify as "a public roadway or drivable right-of-way." *Id*. ¶ 31.

Plaintiffs allege that the Village has allowed some businesses to evade the ordinance's requirements. *Id*. ¶ 33. The ordinance does provide, for instance, exemptions or eased restrictions for property-owners along interstate highways to put up large, "monument" signs to reach drivers, as well as for storefronts located in shopping centers. *See* Sign Ord. §§ 9.030(B). More importantly, the ordinance also categorically exempts from all of its restrictions certain signs, including: governmental and other public signs, railroad and utility signs, street address signs, "no trespassing" notices, real estate signs, "memorial signs and tablets," garage sale notices, and "political signs and noncommercial signs, provided that total area … not exceed a maximum area of 12 square feet per lot" and they are not "placed in the public right-of-way." *Id*. § 9.030.

The ordinance established an amortization period by which all signs in the Village had to come into compliance, which expired in May 2014. Am. Compl. ¶ 56; Sign Ord. § 9.090(G). The amortization period did not offer any compensation to affected property owners, although any sign previously granted a variance could continue to be nonconforming. Am. Compl. ¶ 56; Sign Ord. §§ 9.090(G); 9.09(H). Now that the compliance period is over, Leibundguth faces fines up to $750 per violation per day, Am. Compl. ¶ 63 (citing Downers Grove Municipal Code), although the Village has agreed to not assess any fines until there is decision on the anticipated summary-judgment motions, R. 11, Minute Entry dated Jan. 30, 2015.

In September and October 2014, Peterson attended Village Council meetings, where resolutions to amend the sign ordinance to allow signs to face the Metra tracks were introduced. Am. Compl. ¶ 59. They failed. *See,* R. 10-3, Sep. 2 and Oct. 7, 2014 Village Council Mtg. Minutes. Peterson also applied with the Downers Grove Zoning Board of Appeals for variances that would allow Leibundguth a Metra-facing sign, signs painted directly on the wall of the building, and total signage that exceeded the restrictions. *Id.* ¶ 60. The Zoning Board denied the request on November 19, 2014, giving Leibundguth until April 17, 2015 to paint over the painted signs in a solid color. *Id.* ¶ 60; *see* R. 10-4, Patrick Ainsworth Ltr. dated Nov. 26, 2014.

## C. The Present Lawsuit

After losing on the variance request, Plaintiffs filed this action on December 8, 2014. R. 1, Compl. Count One of the amended complaint challenges the "sign ordinance's content-based restrictions." Am. Compl., Count I. Count Two challenges the ban on painted wall signs in particular, Count Three the requirement that signs face a roadway and not the Metra tracks, and Count Four the limits on total signage area and number of wall signs. *Id.*, Counts II-IV. In lieu of a preliminary-injunction hearing, the parties agreed to expedite the litigation, with the Village forbearing on enforcing the sign ordinance until this Court decides upcoming summary-judgment motions. Minute Entry dated Jan. 30, 2015. Although the Village filed this motion to dismiss on February 5, 2015 [R. 13], fact discovery has

been completed and the parties are in the midst of expert discovery. R. 27, Minute Entry dated Mar. 25, 2015.

## II. Legal Standard

Although the Village couches its motion as a Rule 12(b)(6) motion to dismiss, because it has filed an answer, the motion should be treated as one for judgment on the pleadings under Rule 12(c). *See Lanigan v. Vill. of E. Hazel Crest, Ill.*, 110 F.3d 467, 470 n.2 (7th Cir. 1997). In any event, the same standard applies. *Adams v. Indianapolis*, 742 F.3d 720, 727-28 (7th Cir. 2014) ("A motion for judgment on the pleadings under Rule 12(c) ... is governed by the same standards as a motion to dismiss for failure to state a claim under Rule 12(b)(6)."). That standard requires the Court to decide "the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678-79.

### III. Analysis

### A. The Claims are Timely

To begin, the Village half-heartedly raises an argument on the timeliness of Plaintiffs' claims. The Village argues that any effort by Plaintiffs to seek "judicial review" of the Village Council's denial of their request to amend the sign ordinance and the Zoning Board's rejection of their variances is time-barred. R. 14, Def's Br. at 3-5 (citing part of the Illinois Municipal Code, 65 ILCS 5/11-13-25, which requires commencement of judicial review of municipality's zoning decision within 90 days, and 735 ILCS 5/3-103, which requires review of final administrative decisions, such as the Zoning Board's, within 35 days). Although the Illinois Municipal Code deadlines cited by the Village are correct, to assert that they play any role in this federal lawsuit is wrong.

The claims in this action are brought *independent* of the Illinois Municipal Code review framework. Plaintiffs target the alleged deprivation of federal constitutional rights (via the procedural vehicle of 42 U.S.C. § 1983) and of rights under the Illinois Constitution (as state-law claims over which this Court has supplemental jurisdiction). In Illinois, the statute of limitations for most federal constitutional claims, asserted via § 1983, is two years. *Dominguez v. Hendley*, 545 F.3d 585, 588 (7th Cir. 2008) (applying analogous state-law statute of limitations). In its reply brief, the Village concedes that this two-year limitations period applies, yet nonetheless asserts that the case cannot be "broaden[ed] … into a judicial review of the Village's denial of relief." R. 25, Def.'s Reply Br. at 1-2. But Plaintiffs

did not and have not asked for judicial review of the Village Council's refusal to amend the ordinance or the Zoning Board's rejection of the variances (the Zoning Board decision would be reviewed by a state court). Rather, Plaintiffs seek a declaration as to the constitutionality of the sign restrictions. Seeking declaration is not the same as seeking judicial review of the Zoning Board under the Illinois Municipal Code, and is a request for relief against an alleged ongoing harm. *See Lavey v. City of Two Rivers*, 994 F. Supp. 1019, 1023 (E.D. Wis. 1998) ("[I]t is doubtful that an ordinance facially offensive to the First Amendment can be insulated from challenge by a statutory limitations period.") (quoting *National Adver. Co. v. City of Raleigh*, 947 F.2d 1158, 1162-63 (4th Cir. 1991)). There is no timeliness problem.

## B. Peterson is Dismissed as an Individual Plaintiff

Next, the Village challenges whether Peterson has standing to be included as a plaintiff in the case. Def.'s Reply Br. at 3-4. On this issue, the Village is correct; he does not. On their face, the allegations in the amended complaint only describe harms that the challenged sign ordinance inflicts upon Leibundguth: specifically, a decrease in customers and lost income for the business. *See* Am. Compl. ¶ 64 (ordinance endangers "best sources of revenue"). Sure, Peterson appears to be the company's sole owner, but a corporate shareholder does not have a right of action to sue for injuries that are actually suffered by the corporation and only derivatively by the individual—even where the harm is a financial one that ultimately affects corporate, and therefore, shareholder value. *See Massey v. Merrill Lynch & Co.*, 464

F.3d 642, 645 (7th Cir. 2006). In particular, "a plaintiff-shareholder cannot maintain a civil rights action for damages suffered by the corporation." *Flynn v. Merrick*, 881 F.2d 446, 450 (7th Cir. 1989) (citation omitted) ("Filing suit under 42 U.S.C. § 1983 does not diminish the requirement that the shareholder suffer some individual, direct injury.").

A shareholder may be able to assert an individual right of action in limited circumstances, if allowed by the law of the state of incorporation. *See Boland v. Engle*, 113 F.3d 706, 715 (7th Cir. 1997). Leibundguth is incorporated in Illinois, Am. Compl. ¶ 11, which "follows the widespread rule that an action for harm to the corporation must be brought in the corporate name." *Frank v. Hadesman & Frank, Inc.*, 83 F.3d 158, 160 (7th Cir. 1996). Both the Seventh Circuit and Illinois courts have refused to disavow this principle even where a corporation is closely held. *Frank*, 83 F.3d at 160-61; *see also Small v. Sussman*, 713 N.E.2d 1216, 1219-20 (Ill. App. 1999). One very narrow exception to the prevalent rule exists where a specific statutory right of action has been carved out for a shareholder to sue in his own name. *See Mann v. Kemper Fin. Cos., Inc.*, 247 618 N.E.2d 317, 324 (Ill. App. Ct. 1992). It is clear on their face that Plaintiffs' pleadings do not satisfy this exception, or otherwise provide any basis to assert an injury to Peterson individually.

It should be noted, however, that the Village raises the issue of Peterson's injury, or lack thereof, only in its reply brief. Arguments raised for the first time in reply briefs are ordinarily waived, and rightly so given the lack of opportunity for the other party to respond to them. *See, e.g., Carroll v. Lynch*, 698 F.3d 561, 564 n.2

(7th Cir. 2012). Nevertheless, because it is self-evident from the amended complaint that the only harms alleged are to Leibundguth the corporation, the Village's motion to dismiss Peterson as a plaintiff is granted. Peterson, however, may propose an amended complaint to shore-up allegations on how he himself (separate from the corporation) has been personally injured by the Village's sign restrictions, if he indeed has. *See* Fed. R. Civ. P. 15(a) (leave to amend should be freely given "when justice so requires").

## C. Leibundguth States a Claim to Relief

With these preliminary matters out of the way, it is time to turn to the substance of the claims and whether they state a plausible claim to relief under the First Amendment.[3] The Village musters two unconvincing lines of attack in support of its motion to dismiss, neither of which properly characterizes the legal issues at play.

### 1. Count One

The Village first seeks dismissal of Count One of the amended complaint, which challenges the "content-based restrictions" of the sign ordinance, on what it

---

[3]The First Amendment is applicable to the States, and by extension local governments, by virtue of the Fourteenth Amendment. *See Schneider v. State*, 308 U.S. 147, 160 (1939). Although Leibundguth also brings a claim under Article I, Section 4 of the Illinois Constitution, which is analogous to the free-speech clause of the First Amendment, the parties focus all of their arguments on the federal constitutional claims. The Court follows the parties' lead, but it bears mention that the Illinois Supreme Court has cautioned that the state constitution "may afford greater protection than the [F]irst [A]mendment in some circumstances," although not necessarily "in every context." *City of Chicago v. Pooh Bah Enterprises, Inc.*, 865 N.E.2d 133, 168 (Ill. 2006). In this case, because Leibundguth's First Amendment claims survive dismissal, there is no need at this time to address the merits of the claims—and to what degree, if any, they differ—under the Illinois constitution.

describes as a standing problem[4]: according to the Village, Leibundguth cannot include a claim "generally" assailing the sign ordinance because the harms alleged by the amended complaint "causally connect" only to the three specific sign restrictions (that is, the prohibition against painted signs, the total signage-area limit, and one-sign-per-road-frontage rule), which are already challenged in the remaining three Counts. Def.'s Br. at 5-7. This is an overly cramped reading of the claims. One premise of Leibundguth's claims is that the company's free-speech rights are impinged not only by the three type-and-scale restrictions in themselves, but in their relation to another key part of the ordinance: the exception for noncommercial signs (such as political signs). *See* Am. Compl. ¶¶ 66-74. Specifically, one of Leibundguth's claims is that the sign ordinance targets the display of some, but not all, signs, and the difference in treatment is based on the signs' *content*, which usually triggers a very different level of First Amendment scrutiny. *See Linmark Associates, Inc. v. Willingboro Twp.*, 431 U.S. 85, 93-94 (1977) (prohibition of "for sale" signs but not other types of lawn signs is content-based restriction).

The Village's specific arguments attacking Count One lack merit. First, the Village insists that Leibundguth lacks "standing to generally challenge the entire sign ordinance," even if it asserts and "leverage[s]" its own particular "injury under certain specific provisions." Def.'s Reply Br. at 5-6. Based on the Ninth Circuit case the Village cites, the thrust of this point appears to be that Leibundguth may not

---

[4]As Plaintiffs point out, R. 23, Pls.' Br. at 4 n.3, the procedural vehicle for a motion to dismiss for lack of standing—"standing" in the true sense of a jurisdictional problem—is Fed. R. Civ. P. 12(b)(1), not Rule 12(b)(6). *See Retired Chicago Police Ass'n v. City of Chicago*, 76 F.3d 856, 862 (7th Cir. 1996). The difference does not matter here.

call into question the constitutionality of the sign ordinance as a whole, that is, simultaneously challenge any unrelated provisions in the process of attacking its problematic portions. *See Get Outdoors II, LLC v. City of San Diego, Cal.*, 506 F.3d 886, 892 (9th Cir. 2007) (company has standing only to challenge provisions of ordinance restricting billboards that affect it). In other words, the Village worries that Leibundguth wants to throw the baby out with the bathwater. But by its own terms, the amended complaint does not seek to invalidate the entirety of the sign ordinance, only the unconstitutional "content-based restrictions" currently affecting Leibundguth. Am. Compl., Count I. Those questioned portions are the three specific type-and-scale restrictions and the exemption for certain non-commercial speech, nothing more. The Court accordingly need not, and does not, interpret Count One in the impermissibly expansive way that the Village suggests applies.

Second, the Village changes gears to suggest that Leibundguth lacks standing to challenge the ordinance's regulations as they "do not impact that plaintiff's specific sign." Def.'s Reply Br. at 6. There is little difficulty in finding that Leibundguth has alleged a direct harm from the content-based restrictions of the ordinance: the loss of its right to display its long-standing, revenue-generating advertisements. Were Leibundguth's specific signs political or memorial in nature, as opposed to advertisements, they would not be restricted in how and where they could be displayed. *Harp Adver. Illinois, Inc. v. Vill. of Chicago Ridge, Ill.*, 9 F.3d 1290 (7th Cir. 1993), cited by the Village, is inapposite. In that case, the plaintiff challenging a village's sign and zoning codes lacked standing because even if it had

prevailed in litigation, it could not have built its desired billboard anyway, because the sign would have violated an unrelated, unchallenged size restriction. *Id.* at 1291. Leibundguth, by contrast, challenges the precise provisions that affect its ability to display its existing signs as it wishes.[5] Victory in this lawsuit would remove the impediments in question.

In sum, Count One poses no standing problem. Leibundguth has stated the constitutional minima to satisfy the standing requirement, including an injury-in-fact (restrictions on its revenue-generating advertisements), a causal connection between that injury and the complained-of conduct (the ordinance imposes the content-based restrictions), and a likelihood that a favorable decision would redress that injury. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Count One survives.

---

[5]In view of Leibundguth's challenge to specific provisions, the Village is wrong when it asserts that Leibundguth relies on the "overbreadth" doctrine. Def.'s Reply Br. at 6. Under the overbreadth doctrine, "a person may challenge a statute that infringes protected speech even if the statute constitutionally might be applied to him." *Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447, 463 n.20 (1978). Leibundguth challenges the sign ordinance because the ordinance, the argument goes, cannot be constitutionally applied to *Leibundguth* itself and its signs. *See id.*

## 2. Remaining Counts

In its second line of attack, challenging Counts Two, Three, and Four, which assail the three type-and-scale restrictions specifically, the Village asserts that the rules in question are constitutionally proper "content[-]neutral time, place, and manner" restrictions. Def.'s Br. at 7-11. The Village relies heavily on *Clark v. Cmty. for Creative Non-Violence*, where the Supreme Court made clear that reasonable restrictions on expression "are valid provided that they are justified without reference to the content of the regulated speech, that they are narrowly tailored to serve a significant governmental interest, and that they leave open ample alternative channels for communication of the information." 468 U.S. 288, 293 (1984). The Village's argument is muddled, but it ultimately asserts that, under *Clark* and its progeny, Leibundguth cannot pursue an "as-applied constitutional challenge" for harms caused by the ordinance in its specific case because the ordinance curbs all commercial signs in order to address an "overall[,] general problem" facing the Village. Def.'s Br. at 11.

There are two problems with the Village's reasoning. First, the Village does not actually adduce anything to substantiate its assertion that the ordinance meets the standards for appropriate regulation set by *Clark*. Other than quoting the ordinance's own self-professed rationale for its restrictions, *id.* (citing Sign Ord. § 9.010(A)) (ordinance meant to address "traffic safety, property values, business opportunities and community appearance"), the Village offers no details on the actual nature and scope of these purported problems, and whether—accurately

reflecting that nature and scope—the ordinance is indeed narrowly tailored. The second flaw is more fundamental. *Clark*'s test for speech-restrictions applies only where the regulation in question is content-neutral. 468 U.S. at 295. As already explained in discussing one of the Village's standing arguments, the sign ordinance operates as a restriction *based on content*.

*Clark* thus does not control here. Instead, the Court must look to the Supreme Court's line of cases (not addressed by the Village) dealing with how and when restrictions may be placed specifically on commercial speech. To begin, it is beyond dispute that speech does not lose the protections of the First Amendment simply because it is commercial in nature or "because money is spent to project it, as in a paid advertisement of one form or another." *Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748, 761 (1976) (citing *Buckley v. Valeo*, 424 U.S. 1, 35-59 (1976)); *see also Bigelow v. Virginia,* 421 U.S. 809, 825-26 (1975). "Advertising, however tasteless and excessive it sometimes may seem, is nonetheless dissemination of information as to who is producing and selling what product, for what reason, and at what price," contributing to a "free flow of commercial information" that "is indispensable." *Virginia State Bd. of Pharmacy*, 425 U.S. at 765 (citing *FTC v. Procter & Gamble Co.*, 386 U.S. 568, 603-604 (1967)) (Harlan, J., concurring). The value of this dissemination, which "not only serves the economic interest of the speaker, but also assists consumers," *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*, 447 U.S. 557, 561-62 (1980), is self-evident in a free, market-based society.

That is not to say, of course, that commercial speech may never be subject to restrictions. Indeed, compared to non-commercial expression (say, political or religious in nature), which traditionally and historically has been at the heart of constitutional concerns over free-speech, "[e]xpression concerning purely commercial transactions" is afforded "a limited measure of protection, commensurate with its subordinate position in the scale of First Amendment values[.]" *Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447, 456 (1978); *see also Bates v. State Bar of Arizona*, 433 U.S. 350, 381 (1977) (acknowledging "commonsense differences between commercial speech and other varieties" that decrease risks inherent to overregulation of the former, since it is merely linked to "commercial well-being"); *but see Cent. Hudson Gas & Elec. Corp.*, 447 U.S. at 579-80 (Stevens, J., concurring) (cautioning against overbroad definition of commercial speech that results in "lesser protection because the subject matter concerns only the economic interests of the audience"). Typically, the State's interest (and constitutional propriety) in regulating commercial expression has been greatest where it seeks to protect the public from harms like misleading or deceptive information, *Friedman v. Rogers*, 440 U.S. 1, 13-16 (1979), and speech related to illegal conduct, *Pittsburgh Press Co. v. Pittsburgh Comm'n on Human Relations*, 413 U.S. 376, 387 (1973). By contrast, "bans that target truthful, nonmisleading commercial messages rarely protect consumers from such harms" and automatically draw more suspicion. *44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484, 502-03 (1996) (noting that such

bans also impede public policy debates by obscuring the underlying purpose of the speech regulation in question).

Where the State (or a municipality) wades into such waters, the Supreme Court has taught that particular attention must be paid to the government's actions and justifications. If the targeted speech concerns lawful activity and is not misleading, and the governmental interest being asserted is substantial, then constitutionality turns on whether the regulation "directly advances" and "is not more extensive than is necessary to serve" that interest. *Cent. Hudson Gas & Elec. Corp.*, 447 U.S. at 566. Importantly, the would-be regulator is under no obligation to prove that "the manner of restriction is absolutely the least severe that will achieve the desired end." *Bd. of Trustees of State Univ. of New York v. Fox*, 492 U.S. 469, 480 (1989). What *is* required "is a fit between the legislature's ends and the means chosen to accomplish those ends—a fit that is not necessarily perfect, but reasonable; that represents not necessarily the single best disposition but one whose scope is in proportion to the interest served." *Id.* (quoting *Posadas de Puerto Rico Associates v. Tourism Co. of Puerto Rico*, 478 U.S. 328, 341 (1986), and *In re R. M. J.*, 455 U.S. 191, 203 (1982)) (internal quotation marks omitted). Whatever its objective may be, the restriction must be "narrowly drawn." *Cent. Hudson Gas & Elec. Corp.*, 447 U.S. at 565 (quoting *In re Primus*, 436 U.S. 412, 438 (1978)).

There is no dispute that Leibundguth's endangered signs are not misleading and do not concern anything illegal; they simply announce the company name and phone number, as well as a partner-business's name. The only question is, first,

whether the Village's sign ordinance pursues a substantial governmental interest and, if so, whether it is an appropriate fit to address that interest. The answer, at this stage, is that we do not know. That much should already be clear, because as we have seen, aside from quoting from the ordinance's own generic language, the Village offers nothing to shed light on the actual scope of the asserted problems (ostensibly, aesthetics, property values, and safety), without which it is impossible to evaluate whether the ordinance indeed advances narrowly-drawn solutions to deal with substantial governmental issues.

*City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410 (1993), is particularly apt to highlight the problems with the Village's motion. In that case, the Supreme Court invalidated a city ordinance banning newsracks distributing "commercial handbills" but not those that dispensed traditional newspapers. *Id*. at 412. Because "whether any particular newsrack [fell] within the ban [was] determined by the content of the publication resting inside," the Court concluded, "by any commonsense understanding of the term," the ban was "content-based." *Id*. at 429 (finding "city's naked assertion that commercial speech has 'low value'" insufficient to render policy content-neutral). The city, like the Village here, cited safety and aesthetics to justify the selective prohibition, but the Court found that it had not met its burden of establishing a "reasonable fit between its legitimate interests … and its choice of a limited and selective prohibition of newsracks as the means chosen to serve those interests." *Id*. at 416-17 (noting that plaintiffs did not dispute that safety and esthetics were substantial interests) (citing *Fox*, 492 U.S. at

480). Although the city ostensibly acted to "prevent the kind of visual blight caused by littering, … [t]he fact that the city failed to address [this] recently developed concern about newsracks by regulating their size, shape, appearance, or number indicate[d] that it ha[d] not 'carefully calculated' the costs and benefits associated with the burden on speech imposed by its prohibition." *Id.* at 417.

The Village's sign ordinance analogously functions to restrict a particular method of disseminating speech, but only where the content is commercial. It is true that, for its part, the Village did not impose a blanket ban on commercial wall signs, instead taking the less drastic step of limiting "their size, shape, appearance, and number." But the fact remains that other types of signs do not face the type-and-scale restrictions placed on commercial advertisements. The Village must do more than cite its own ordinance to vindicate even these limited, content-based restrictions, some of which, on the face of the pleadings alone, arguably seem to be arbitrary. For instance, keeping in mind the stated concern for aesthetics and safety, it is difficult to intuit how a giant, tacky "Vote for Joe" sign (painted garishly and directly onto brick, let's say) would be any less distracting to an unfocused motorist or annoying to a property-value-minded neighbor than one that read "Eat at Joe's." Nor is it immediately self-evident why restricting the latter but not the former to a total of 300 square feet and to a road-facing frontage, while prohibiting it from a back wall visible for the most part only to commuter-rail passengers, would improve the community's visual appeal or traffic safety.

The Village protests that "a municipality could never have 'content neutral' sign regulations unless both commercial speech and non-commercial speech sign regulations were identical; for if not, they would be per se 'content based[.]'" Def.'s Reply Br. at 4. This is a straw-man objection. Commercial and non-commercial speech *can* be subject to different levels of restriction consistent with the First Amendment. *See Ohralik*, 436 U.S. at 456. Nothing in this discussion suggests that the Village's rules must be exactly the same for both types of signs; as explained earlier, content-based limitations, even of innocuous, truthful advertisements, *are* permissible. *See Cent. Hudson Gas & Elec. Corp.*, 447 U.S. at 566. To impose them, however, the Village has to present its carefully-calculated reasons justifying the ordinance as a reasonable fit, even if not necessarily a perfect one. *See Fox*, 492 U.S. at 480. The Village might well be able to do just that. But at this pleading stage of the litigation, just saying so is not enough to sink the amended complaint.

## IV. Conclusion

For the reasons discussed above, the motion to dismiss is denied in large part. It is granted only to dismiss Peterson from the action as a plaintiff in his individual capacity. Peterson may propose an amended complaint, if he wants to try, alleging how he himself has been individually harmed by the sign ordinance. That proposal is due no later than May 11, 2015.

With an eye towards completing discovery expeditiously, the Village shall disclose its rebuttal expert report by May 18, 2015 and the deposition of that expert shall be completed by June 2, 2015. The status hearing of May 22, 2015 remains in

place so that the Court can set the summary-judgment briefing schedule, premised on completion of expert discovery on June 2.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: April 27, 2015