ROBERT PETERSON and LEIBUNDGUTH )
STORAGE & VAN SERVICE, INC., )
)
        Plaintiffs, )    No. 14 C 09851
)
   v. )
)    Judge Edmond E. Chang
VILLAGE OF DOWNERS GROVE, )
ILLINOIS, )
)
        Defendant. )

## ORDER

Leibundguth Storage & Van Service has moved to stay enforcement of Downers Grove's Sign Ordinance during the pendency of post-judgment motions and of any upcoming appeal.[1] R. 54. Leibundguth filed the motion under Federal Rule of Civil Procedure 62. The other pending question is whether the Court should relinquish supplemental jurisdiction over the Village's state-law counterclaim. The parties have submitted position papers on that issue. R. 56; R. 57. For the reasons set forth below, the Court denies Leibundguth's motion requesting a stay. It also relinquishes jurisdiction over the remainder of the Village's counterclaim, and dismisses it without prejudice.

## I. Background

The Court assumes familiarity with the factual and procedural background of this case. A detailed summary of Leibundguth's allegations, and the procedural

---

[1]This Court has subject matter jurisdiction over the case under federal-question jurisdiction, 28 U.S.C. § 1331, including the state-law counterclaim under § 1367.

history up until this point, can be found in the December 14, 2015 Memorandum Opinion and Order. R. 51. (For convenience, the Court will refer to that opinion as the "December 2015 Opinion.") This Opinion sets out only those facts relevant to deciding the two still-open questions.

In December 2014, Leibundguth sued the Village of Downers Grove, alleging that the Village's Sign Ordinance, and in particular its provisions prohibiting painted wall signs and limiting the size and number of wall signs that a business may display, violated the First Amendment. R. 1, Compl.; R. 10, Am. Compl; *see also* R. 38-1, Exh. 2, Sign Ord. § 9.020(P) (painted wall sign ban), § 9.050(A) & (C) (size and number restrictions). In its prayer for relief, Leibundguth asked this Court to (among other things) issue a permanent injunction prohibiting the enforcement of the challenged provisions of the Sign Ordinance. Am. Compl. at 21 (Prayer for Relief Letter D). The Village answered Leibundguth's complaint and filed a counterclaim. R. 12, Ans. and Countercl. In its counterclaim, the Village asks this Court: (1) to declare the challenged sign provisions constitutional, (2) to order Leibundguth to bring all non-conforming signs into compliance with the Sign Ordinance within 30 days of deciding the constitutional question, and (3) to award the Village—in the event Leibundguth fails to bring its signs into timely compliance—fines and any other additional relief that may be appropriate under the Ordinance. R. 12, Countercl.

After the parties finished taking discovery, the Village filed a motion for summary judgment, in which it asked for summary judgment in its favor against all

counts in Leibundguth's amended complaint (from now on, the amended complaint will be referred to simply as the complaint). R. 35, Def.'s Mot. Summ. J.; R. 36, Def.'s Summ. J. Br. at 20. The Village did *not* ask for summary judgment on its counterclaim, and in fact the counterclaim was mentioned only one time in a procedural-background sentence. *Id.* Leibundguth then filed its own cross motion for summary judgment, in which it too asked for summary judgment in its favor on all counts in its complaint. R. 39, Pl.'s Mot. Summ. J. at 4-5. On December 14, 2015, the Court granted summary judgment in favor of the Village on all counts in Leibundguth's complaint. R. 51, December 2015 Opinion. The Court concluded that the Sign Ordinance's prohibition on painted wall signs—§ 9.020(P) of the Sign Ordinance—constituted a valid content-neutral time, place, or manner restriction, and that the Sign Ordinance's restriction on the size and number of wall signs a business may display—§§9.050(A) and (C) of the Ordinance—constituted a valid restriction on commercial speech under *Central Hudson Gas & Elec. Corp. v. Public Svc. Comm'n*, 447 U.S. 557 (1980). *Id.*

The December 2015 Opinion did not specifically address the Village's counterclaim, and in particular, did not address the state-law issues in the counterclaim, which neither party had briefed. At the status hearing following the December 2015 Opinion, because there was no reason to delay, the Court decided to enter a Rule 54(b) judgment on Leibundguth's claims, all of which were federal claims, and on the federal portion of the Village's counterclaim (that is, the portion asking for a declaration of constitutionality). R. 52 (Jan. 7, 2016 Minute Entry). At

the same time, the Court ordered the parties to file position papers addressing whether supplemental jurisdiction should be relinquished as to the remaining issues in the Village's counterclaim, all of which were grounded in state law. *Id.*

Leibundguth then filed a motion, under Federal Rule of Civil Procedure 62(b) and (c), asking to stay enforcement of the Sign Ordinance during the pendency of the anticipated post-judgment motions and the eventual appeal. R. 54, Pl.'s Stay Mot.; R. 55, Pl.'s Stay Br. The Village filed a response in opposition. R. 61, Def.'s Stay Resp. Br. At the same time, the parties submitted briefs on the supplemental jurisdiction issue. Leibundguth argues for relinquishment, R. 56, while the Village wants to keep the state-law counterclaim here, R. 60.

## II. Motion to Stay Enforcement of the Sign Ordinance

The Court first addresses Leibundguth's request to stay the enforcement of the Sign Ordinance during the pendency of post-judgment motions and any appeal. R. 54, Pl.'s Stay Mot. Leibundguth contends that "[w]ithout an order from the Court staying enforcement of the relevant provisions of [the] … Sign Ordinance, including the accrual of fines," Leibundguth "will be forced to choose between forgoing its free speech rights by removing its signs … and risking the assessment of … hundreds of thousands of dollars in fines while it exercises its right to appeal the judgment against it."[2] R. 55, Pl.'s Stay Br. at 1. Although Leibundguth frames its request as one for a stay of the execution of the Rule 54(b) judgment—and any proceedings to

---

[2]The Sign Ordinance permits the Village to impose fines of between $75 and $750 per day per violation. R. 10, Exh. E, Downers Grove Municipal Code at 7 (Section 1.15). Because three of Leibundguth's signs are in violation of the Ordinance, the Village contends that Leibundguth faces a fine of anywhere between $225 and $2,250 per day. R. 57, Def.'s Suppl. Juris. Br. at 4.

enforce that judgment—pending a Rule 59 post-trial motion and appeal, that is not what Leibundguth is actually seeking. A stay merely defers the effective date of a court's order and returns the parties (at least while the stay is in effect) to the position they were in before the court issued its judgment. *Illinois Bell Tel. Co. v. WorldCom Techs., Inc.*, 157 F.3d 500, 503 (7th Cir. 1998); *see also Nken v. Holder*, 556 U.S. 418, 421 (2009) (noting that "a stay operates upon the judicial proceeding itself," and either "halt[s] or postpon[es] some portion of the proceeding," or "temporarily divest[s] an order of enforceability"). In this case, even if a stay were to be issued, Leibundguth would still remain subject to the regulations of the Sign Ordinance, because municipal ordinances are presumed valid absent a ruling to the contrary. *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 440 (1985) ("The general rule is that legislation is presumed to be valid … "); *see Brown v. Gilmore*, 533 U.S. 1301, 122 S. Ct. 1, 2 (2001) (Rehnquist, J.) (in chambers). So, what Leibundguth is seeking here is not merely a stay, it really is an *injunction* against the Village, which would prevent, for now, the Village from enforcing its Sign Ordinance (along with the daily fine provision) against Leibundguth. *Illinois Bell Tel. Co.*, 157 F.3d at 503 (distinguishing stays and injunctions, and noting that "[a] judicial order that prevents a statute, regulation, or administrative decision from taking effect is an injunction"); *see also Nken*, 556 U.S. at 429 (explaining that "[a] stay simply suspends judicial alteration of the status quo, while injunctive relief grants judicial intervention that has been withheld by lower courts" (internal

quotation marks omitted)). Whether Leibundguth is entitled to that relief is governed by Federal Rule of Civil Procedure 62(c).

Rule 62(c) authorizes a district court to suspend modify, restore, or grant an injunction during the pendency of an appeal over an injunction (or the denial of one). Fed. R. Civ. P. 62(c); 11 Fed. Prac. & Proc. Civ. § 2904 (3d ed. 2015). In relevant part, Rule 62(c) provides: "While an appeal is pending from an interlocutory order or final judgment that grants, dissolves, or denies an injunction, the court may suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights." Whether to grant relief under Rule 62(c) is a discretionary call. Fed. R. Civ. P. 62(c); *Abbott Laboratories v. Sandoz, Inc.*, 500 F. Supp. 2d 846, 849 (N.D. Ill. 2007). In deciding whether to grant an injunction pending appeal, a court should consider the following factors: (1) whether the movant has shown a strong likelihood of success on the merits; (2) whether the movant will be irreparably harmed absent an injunction; (3) whether issuance of an injunction will substantially harm other interested parties; and (4) where the public interest lies. *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987). The party seeking an injunction bears the burden of proving these factors. *Id.*

While these factors are similar to the factors a court considers when determining whether to grant a preliminary injunction, there is one important difference. In the Rule 62(c) context, because a movant's arguments on the merits will have already been evaluated by the time the movant requests a Rule 62(c) injunction, the movant "must make a stronger threshold showing of likelihood of

success to meet its burden." *In the Matter of Forty-Eight Insulations, Inc.*, 115 F.3d 1294, 1301 (7th Cir. 1997); *see also* 16A Fed. Prac. & Proc. Juris. § 3954 (4th ed. 2015) (Motion for a Stay or Injunction). Thus, to satisfy this first factor, a movant must "demonstrate a substantial showing of likelihood of success, not merely the possibility of success[.]" *In the Matter of Forty-Eight Insulations, Inc.*, 115 F.3d at 1301. If a movant is able to make this showing, and to demonstrate that it will be irreparably harmed absent an injunction (the second factor), then the Court considers all four factors together using a sliding scale approach. *Cavel Int'l Inc. v. Madigan*, 500 F.3d 544, 547 (7th Cir. 2007); 16A Fed. Prac. & Proc. Juris. § 3954. It should be emphasized, however, that injunctive relief is an "extraordinary remedy," whether the injunction is permanent, *Monsanto Co. v. Geerston Seed Farms, Inc.*, 561 U.S. 139, 165-66 (2010) ("injunction is a drastic and extraordinary remedy"), or temporary, *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 22 (2008) ("extraordinary remedy"). And the burden on the movant is especially high when seeking to enjoin an ordinance that this Court has now upheld and that is presumed valid, *see Brown*, 533 U.S. at 1303; *see also IMS Health Inc. v. Sorrell*, 631 F. Supp. 2d 429, 431 (D. Vt. 2009).

Here, Leibundguth is unable to make the necessary showing for it to be entitled to relief under Rule 62(c).[3] The only factor that arguably weighs in

---

[3]It is worth noting two procedural points under Rule 62(c). First, Leibundguth has not yet filed an appeal, which arguably makes Leibundguth's motion premature. Technically, Rule 62(c) is not properly invoked until "an appeal is pending." Fed. R. Civ. P. 62(c). But there is authority for the proposition that a court may address a Rule 62(c) motion, even if an appeal has not yet been filed, where there is reason to believe that an appeal will be taken. *See* 11 Fed. Prac. & Proc. Civ. § 2904 (3d ed. 2015); *Rite-Hite Corp. v.*

Leibundguth's favor is the second factor, which requires a showing of irreparable harm. Leibundguth asserts that, without injunctive relief, it will suffer irreparable harm to its First Amendment rights because it will be forced to remove its signs and suppress its speech pending appeal. Pl.'s Stay Br. at 2. Where enforcement of an ordinance threatens to infringe an individual's (or in this case, an entity's) First Amendment rights, the likelihood of irreparable harm is generally presumed. *Elrod v. Burns*, 427 U.S. 347, 373 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."); *Citizens for a Better Environment v. City of Park Ridge*, 567 F.2d 689, 691 (7th Cir. 1975); *see also Korte v. Sebelius*, 528 Fed. App'x 583 (7th Cir. 2012) (finding irreparable harm requirement satisfied where "[w]ithout an injunction, [movant] will be forced to choose between violating their religious beliefs … and subjecting their company to substantial financial penalties"). So Leibundguth has met its burden as to this factor. But it is worth noting that because the First Amendment interest at stake here is commercial speech, which is generally considered as deserving somewhat less protection than political and other forms of speech, *see Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447, 456 (1978), the potential harm Leibundguth faces in this

---

*Kelley Co., Inc.*, 629 F. Supp. 1042, 1066 (E.D. Wis. 1986) (addressing Rule 62 motion before appeal filed, but conditioning its ruling on the movant filing a notice of appeal within a specified period). In this case, there is enough reason to believe that Leibundguth will file an appeal that consideration of the motion is appropriate.

The second procedural point is that Rule 62(c) has been interpreted to allow a court to act only to maintain the status quo, and nothing more. *See Basicomputer Corp. v. Scott*, 973 F.2d 507, 513 (6th Cir. 1992). But the status quo of non-enforcement was based on an agreement between the parties that will expire on February 4, 2016, now that the decision on Leibundguth's claims has been issued. In any event, as discussed in this Order, Leibundguth has failed to show that it is entitled to an injunction on the merits.

case is not as great as the harm that would be faced in a case where a municipality's action implicates core First Amendment values. So, although this factor tips in Leibundguth's favor, it does not weigh-in very strongly.

Outside of this one factor, however, all of the remaining factors weigh against Leibundguth, and thus against the issuance of an injunction. Indeed, fatal to Leibundguth's claim is its inability to make a strong showing that it is likely to succeed on appeal. Under this factor, Leibundguth advances two points against the December 2015 Opinion. Turning first to the Village's ban on painted wall signs, which prohibits "any sign painted directly on a wall, roof or fence," Sign Ord. § 9.020(P), Leibundguth argues that the appellate court will likely find that the Village provided insufficient evidence to show that the painted sign ban advances [the Village's] interest in aesthetics." Pl.'s Stay Br. at 6. But Leibundguth presents no new authority in its pending motion to undermine the December 2015 Opinion. Instead, Leibundguth merely rehashes arguments the Court previously rejected. And as the Court explained in detail in the Opinion, the Village offered enough evidence to show that the Sign Ordinance's ban on painted wall signs advances the Village's interest in aesthetics. The Village took hundreds of photographs of signs around the Village and in nearby towns, noting the various sign styles and structures in use, all before implementing its Sign Ordinance. R. 51, December 2015 Opinion at 17 (citing R. 37-4, Exh. 1D at 160-348). It also made note of ways in which the community's business signs could be restyled so as to improve their appearance. *Id.* (citing R. 37-4, Exh. 1D at 326). And in a Staff Report prepared for

the Village's Plan Commission, the Village specifically discussed the aesthetic problems associated with painted wall signs, including that painted wall signs pose permanence problems, require on-going maintenance, and often cause damage to the underlying structure when removed and leave "ghost signs" in their wake. R. 36-3, Exh. C., 2015 Staff Report. All of these facts show that the Village did not "blindly invoke" aesthetic concerns to support its restriction on painted signs. *See Weinburg v. City of Chicago*, 310 F.3d 1029, 1038 (7th Cir. 2002) (noting that the evidence provided in support of a governmental justification need not be "overwhelming" and must simply show that the government did not "blindly invoke" a particular concern); *City of Watseka v. Illinois Public Action Council*, 796 F.2d 1547, 1554 (7th Cir. 1986) (noting that the First Amendment merely requires that "whatever evidence the city relies upon is reasonably believed to be relevant to the problem that the city addresses"). Leibundguth offers nothing new to contradict the prior holding, or to show a strong likelihood of success on appeal.

Leibundguth also argues that "there is a likelihood that the appellate court will find that the painted sign ban is not narrowly tailored to serve the Village's interest in aesthetics." Pl.'s Stay Br. at 8. But again, Leibundguth fails to offer any new reason in support of its argument. Merely repeating arguments made during summary judgment does not demonstrate that Leibundguth is any more likely to succeed on the merits of its claim on appeal than it was when the Court issued its prior judgment. *Nat'l Ass'n of Mfrs. v. Taylor*, 549 F. Supp. 2d 68, 75 (D.D.C. 2008).

In its pending motion, Leibundguth does—for the first time—raise the issue that the Staff Report was issued in July 2015, *after* discovery had closed in this case. Pl.'s Stay Br. at 7-8. Leibundguth argues that because of this, it cannot be "know[n] whether the contents of the [Staff] Report accurately reflect real concerns about painted signs." *Id.* at 8. It is true that the Staff Report was issued in July 2015. It was issued in support of an amendment to § 9.020(P) that was adopted in July of 2015 as well, which banned painted wall signs throughout the Village and made the provision what it is today. 2015 Staff Report at 1; R. 36-2, Exh. B., Am. Sign Ord. at 4. It is also true that discovery had closed in this case by that point. R. 27 (Minute Entry Mar. 25, 2015) (noting both sides reported fact discovery had been completed); R. 39, Pl's Mot. Summ. J. at 3 (noting the parties completed discovery on or before June 2, 2015). But Leibundguth never asked the Court to reopen discovery on this issue once the Staff Report came to light. Not once during summary judgment did Leibundguth bring this issue up. Leibundguth's attempt to raise the issue now comes too late. At this point, Leibundguth has forfeited this argument. *Salas v. Wis. Dep't of Corr.*, 493 F.3d 913, 924 (7th Cir. 2007) ("[A] party forfeits any argument it fails to raise in a brief opposing summary judgment."). Nor has Leibundguth explained, at least in its Rule 62(c) motion, exactly what discovery it would have taken as to the Staff Report.

Turning to Leibundguth's challenge to the Sign Ordinance's restrictions on the size and number of wall signs a business may display, which are codified in §§ 9.050(A) and (C) of the Sign Ordinance. Leibundguth asserts that "[t]here is a

likelihood that the appellate court will find that the size and number restrictions in the Sign Ordinance are unconstitutional." Pl.'s Stay Mot. at 10. According to Leibundguth, the appellate court will likely find that the size and number restrictions are content-based under *Reed v. Town of Gilbert*, 135 S. Ct. 2218 (2015), or, in the alternative, that the Village "did not meet its burden to show that [these] restrictions [are narrowly tailored to] advance a government interest." *Id.* at 10-12. But once again, Leibundguth simply repeats the same arguments it made during summary judgment, and does not explain how the Opinion got it wrong. As noted above, merely rehashing previously made arguments is not enough to demonstrate a *strong* showing of likelihood of success on appeal, especially given the evidence presented by the Village during summary judgment and discussed above. The Court does acknowledge (as it did in its December 2015 Opinion) that because the Supreme Court recently issued its decision in *Reed*, the reach of that decision is not yet clear.[4] So, it is possible that the Seventh Circuit may disagree with the Court's

---

[4]Indeed, the case law in this area is just starting to be developed. For example, the Fourth Circuit recently issued an opinion addressing a sign ordinance following *Reed*. *Central Radio Co. Inc. v. City of Norfolk, Va.*, 2016 WL 360775 (4th Cir. Jan. 29, 2016). In that case, during the midst of an eminent domain battle, the Plaintiff put up a sign on the side of its building that included an American flag, the company's logo, and a message against eminent domain. *Id.* at *2. The City argued that the sign violated its then-effective sign ordinance. *Id.* at *2-3. The ordinance generally applied to all signs, but included an exemption for governmental or religious flags and emblems. *Id.* at *5. At issue for the Fourth Circuit was whether the City's sign ordinance was content-based under *Reed*. The Fourth Circuit determined that the ordinance was in fact content-based because whether it applied or not depended on the content, idea, or message expressed in the sign. *Id.*

This holding, however, does little to help Leibundguth. As far as the ban on painted wall signs is concerned, the Court has already determined that the ban applies to all signs, including those "exempted" from the permit application-and-fee process under § 9.030. So that makes the painted wall sign provision of the Village's Sign Ordinance distinguishable from the ordinance in *Central Radio Co. Inc.* And as far as the regulations limiting the size and number of wall signs go, *Central Radio Co. Inc.* did not address the impact of *Reed* on

12

prior ruling and instead conclude that the Sign Ordinance is content-based under *Reed* and thus subject to strict scrutiny. But Leibundguth offers no reason to think that there is a strong likelihood of this. Notably, Leibundguth does not contest the fact that the Supreme Court never directly addressed commercial speech in *Reed*. Nor does it contest the fact that in *Reed* the Supreme Court made no mention of whether its decision there was meant to overrule *Central Hudson* and its progeny. Absent an express overruling by the Supreme Court of *Central Hudson*, which clearly applies to commercial speech like Leibundguth's signs, *Central Hudson* must be deemed to apply here. *Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477, 484 (1989) ("If a precedent of th[e] [Supreme] Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court … should follow the case which directly controls, leaving to th[e] [Supreme] Court the prerogative of overruling its own decisions."). For all of these reasons, the Court finds that Leibundguth has failed to demonstrate a sufficiently strong showing of likelihood of success on appeal.

The Court also notes that the remaining two factors—whether an injunction will substantially injure the other parties interested in the proceeding, and where the public interest lies—weigh in favor of denying an injunction pending appeal (and pending post-judgment motions). In a case like this, where a party sues a governmental entity to enjoin the enforcement of a law or regulation, these last two factors largely overlap. *See New York State Restaurant Ass'n v. Bd. of Health*, 545 F.

commercial speech, or whether *Reed* overrules *Central Hudson*. So, it again does little to inform the Court's analysis there.

Supp. 2d 363, 368 (S.D.N.Y. 2008). So the Court addresses them together. It is certainly true that the public has a strong interest in the vindication of First Amendment rights, as Leibundguth rightly says. *See Joelner v. Vill. of Washington Park, Illinois*, 378 F.3d 613, 620 (7th Cir. 2004); *Chicago Observer, Inc. v. City of Chicago*, 1990 WL 186397, at *2 (N.D. Ill. 1990). But the Village also shares with the public a strong interest in the prompt enforcement of its laws. Leibundguth's assertion that the Village would suffer *no* harm from an injunction barring the enforcement of its Sign Ordinance (which remember is presumptively valid and has been upheld as constitutional by this Court) is simply incorrect. The Village and its citizens no doubt have an interest in non-interference by a federal court with a presumptively valid law. *Maryland v. King*, 133 S. Ct. 1, 3 (2012) (Roberts, Chief Justice, in chambers) ("Any time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." (internal quotation marks omitted)).

Leibundguth also asserts that because the Village "has permitted [it] to display its signs for a decade since amending the Sign Ordinance," the Village will not be injured by an injunction barring enforcement of the Sign Ordinance pending appeal. Pl.'s Stay Br. at 4. But this argument is unpersuasive because it really is premised on the Village's decision to give residents a long lead time to comply with the Ordinance. The Village's decision to implement a seven-year moratorium from enforcement in the Ordinance, and to later extend that moratorium period by two years, *see* R. 37-4, Exh. 1 at 349 (extending sign compliance deadline from May 2012

14

to May 2014); Sign Ord. § 9.090(G), in order to give residents time to come into compliance with the new regulation does not support Leibundguth's proposition that the Village will suffer no injury if the Court were to now issue an injunction barring enforcement of the Ordinance. In fact, the Village's decision to grant such a long moratorium period actually cuts *against* Leibundguth's argument; it shows that the predicament Leibundguth currently finds itself in was avoidable. Leibundguth had plenty of time to bring suit during the years-long moratorium. As originally enacted, the Sign Ordinance gave residents seven years with which to bring any non-conforming signs into compliance. Leibundguth could have easily brought suit then, and likely had received a district court and appellate court decision by the moratorium period's end. Instead, Leibundguth chose to wait until December 2014 to file suit, after both the original *and* the extended moratorium periods had expired. Simply put, Leibundguth put itself in this position and now it must deal with the consequences of waiting to bring suit.

And lastly on the public-interest factor, if the Court were to grant an injunction to Leibundguth, then in effect the Court would be enjoining the Village from brining an enforcement case against the company. R. 61, Def.'s Stay Br. at 10. Injunctions enjoining state-court proceedings are generally disfavored, *see Mitchum v. Foster*, 407 U.S. 225, 243 (1972) ( … we do not question or qualify in any way the principles of equity, comity, and federalism that must restrain a federal court when asked to enjoin a state court proceeding"), and given that the factors already tip in the Village's favor, the Court will not grant that extraordinary remedy here.

On balance, the Court concludes that the balance of harms and the public interest factors weigh in favor of denying Leibundguth's request for an injunction precluding enforcement of the Sign Ordinance during any post-judgment motions and pending appeal. Leibundguth's motion to stay [R. 54] is denied.

### III. Jurisdiction over the State Law Issues in the Village's Counterclaim

The final issue is whether to relinquish supplemental jurisdiction over what remains of the Village's counterclaim, specifically, the state-law enforcement claim. For this part of the counterclaim, the Village requests that (1) the Court order Leibundguth to bring all non-conforming signs "into strict compliance with the [S]ign [O]rdinance" within 30 days of the Court's judgment on the constitutionality of the Ordinance, and (2) in the event Leibundguth elects not to bring its signs into timely compliance, that the Court "award the Village fines and any additional relief afforded to the Village under the Village Zoning Ordinance." R. 12, Countercl. (Letters B and C in prayer for relief).

Leibundguth argues in favor of the Court relinquishing jurisdiction over the remaining counterclaim. Pointing to the Seventh Circuit's decision in *Carr v. CIGNA Secs.*, 95 F.3d 544 (7th Cir. 1996), Leibundguth argues that when federal claims fall out of a case before trial—as occurred here—a district court should generally "relinquish jurisdiction over any supplemental state law claims in order to minimize federal judicial intrusion into matters of purely state law." R. 56, Pl.'s Suppl. Juris. Br. at 2. The Village takes the opposite position, asserting that the Court should instead retain jurisdiction. According to the Village, these issues are

16

"inherently intertwined" with the Court's Rule 54(b) judgment, and "no judicial economy, convenience or comity [will] be achieved by this Court declining to retain jurisdiction."[5] R. 57, Def.'s Suppl. Juris. Br. at 6. As detailed below, the Court concludes that relinquishing jurisdiction over these remaining state law issues is appropriate in this case.

The Court's subject-matter jurisdiction over the state law issues in the Village's counterclaim arises from the supplemental jurisdiction statute, 28 U.S.C. § 1367, which extends a federal court's jurisdiction to state-law claims "that are so related to [the] claims in the action [that are] within [the court's] original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a). The decision of whether (or not) to exercise supplemental jurisdiction over a state-law claim is a discretionary call. *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639-40 (2009); *RWJ Mgmt. Co. v. BP Prods. North America*, 672 F.3d 476, 479 (7th Cir. 2012); *Larsen v. City of Beloit*, 130 F.3d 1278, 1286 (7th Cir. 1997). In determining whether to exercise supplemental jurisdiction over a state law claim, a court should generally consider and weigh a host of factors, including "the factors of

---

[5]In its briefing, the Village says that the Court "inadvertently overlooked [the] counterclaims" in this case during the summary judgment phase. R. 60, Def.'s Resp. Suppl. Juris. Br. at 4; *see also* R. 61, Def.'s Stay Br. at 1 (stating that the "Court ... elected to withhold ruling on the Village's counterclaim request," and that the Village "advised [the Court] that the summary judgment ruling ... failed to address all of the counterclaim relief"). It is true that the Court should have prompted the parties to address the remaining counterclaim. But the parties too—and the Village in particular—made *no mention* of the Village's counterclaim in their prayers for relief during summary judgment. R. 36, Def.'s Summ. J. Br. at 20; R. 39, Pl.'s Summ. J. Mot. at 4-5. In fact, in all of the summary judgment briefing, the word "counterclaim" is mentioned only once in the background section of the Village's motion. R. 35, Def.'s Summ. J. Mot. at 2. The parties could have (and indeed, should have) raised this issue during summary judgment briefing, at least if they wanted the counterclaim to be addressed in the Opinion.

judicial economy, convenience, fairness and comity." *Wright v. Associated Ins. Companies Inc.*, 29 F.3d 1244, 1251 (7th Cir. 1994); *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 349-50 (1988); *Timm v. Mead Corp.*, 32 F.3d 273, 277 (7th Cir. 1994) (observing that a court should consider "the nature of the state law claims at issue, their ease of resolution, and the actual, and avoidable, expenditure of judicial resources" when determining whether to exercise supplemental jurisdiction).

But the starting point is that Section 1367 has been interpreted to have a general rule: in the case where all federal claims have fallen out before trial, the Seventh Circuit has held that the "general rule" is that a district court "should relinquish jurisdiction over any supplemental … state law claims in order to minimize federal judicial intrusion in matters of purely state law." *Carr*, 95 F.3d at 546; *see also RWJ Mgmt. Co.*, 672 F.3d at 479; *Groce v. Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir. 1999) ("[I]t is the well-established law of this circuit that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial."). This general presumption is of course rebuttable, but the Seventh Circuit has cautioned that it "should not be lightly abandoned." *Khan v. State Oil Co.*, 93 F.3d 1358, 1366 (7th Cir. 1996). Indeed, only three circumstances have been identified as capable of displacing the presumption, only two of which are possibly relevant here. The first is where "substantial judicial resources have already been committed, so that sending the case to another court will cause a substantial duplication of effort." *Sharp Elecs. Corp. v. Metro. Life Ins. Co.*, 578 F.3d 505, 515 (7th Cir. 2009). The second is "when

it is absolutely clear how the [supplemental] claims can be decided."[6] *Id*. If either exception applies, then retaining jurisdiction over the state law issue is normally considered the better approach.

In this case, because the Court decided the federal claims before trial, the general presumption kicks in. To resist the presumption, the Village contends that considerations of judicial economy and the potential for duplication of judicial effort weigh in favor of the Court retaining jurisdiction over these issues. The Village asserts that "significant written and oral discovery has [already] been undertaken and completed" in this case, and that the parties have already "litigated every relevant aspect of the sign ordinance." R. 60, Def.'s Resp. Suppl. Juris. Br. at 3. The Village points out that the Court "has already spent a year learning the facts, the parties and the law," and that if the Court declines jurisdiction, then the parties will be forced "to file a second court proceeding," which will be before "a new judge unfamiliar with the case history and facts, who will be required to learn anew the facts and law," and "[who] will have the exact same limited discretion to impose fines within the mandated range." R. 57, Def.'s Suppl. Juris. Br. at 6. Def.'s Resp. Suppl. Juris. Br. at 6. The Village also argues that the resolution of the state-law counterclaim is clear. *Id*. at 6-7.

The Village's arguments miss the mark, because all the effort in this federal-court case was directed at *federal* constitutional issues. Little, if any, effort has been put into considering the proper way to enforce the Sign Ordinance. Those issues

---

[6]The third exception is when "the statute of limitations has run on the pendant claim, precluding the filing of a separate suit in state court." *Sharp Elecs. Corp.*, 578 F.3d at 514-15. Neither party disputes that this exception is inapplicable to this case.

have yet to be addressed. The result then is that relinquishing jurisdiction over the remaining state-law issues in the Village's counterclaim would lead to almost no duplicative effort on the part of the state court. (Remember too, that the federal constitutional issues that have already been addressed will remain binding on the parties under issue preclusion, so there will be no duplication of effort there either.) Sure, the state court will need to familiarize itself with the facts of the case and the Sign Ordinance, but that does not outweigh the benefit of having a *state* court address the *state*-law enforcement issues that remain in this case. State courts are much more familiar with handling ordinance-enforcement actions. The Village cites to no case where a federal court was the forum in which a village or city brought an ordinance-enforcement action, imposed a fine under an ordinance, figured out injunctive remedies, and so on. Indeed, the Village's view of when to retrain supplemental jurisdiction would require federal courts that have decided a federal constitutional challenge to an ordinance to then (if the ordinance is upheld) wade into the quite different ordinance-enforcement action. That would include zoning disputes, business-licensing requirements, sanitation codes, and any of the myriad subjects that are regulated by municipalities.

Bear in mind too that state courts ought to be the interpreters of state and local law on any potential enforcement defenses that might arise. Already Leibundguth has referred to some arguments that might need state-court interpretation in defending against the enforcement action and what the remedies should be. Would the winter-season temperatures permit Leibundguth to wait to

paint over the wall? Or should the company be required to put a covering of some kind over the signs? Would a cover comply with the Sign Ordinance, or would a cover conflict with another provision of the building code? Should the fine be on the lower end, the middle, or upper end of the range of the very expansive range (from $75 to $750)? Should the fines escalate over time? Should Leibundguth's business license and occupancy permit be suspended? R. 10-5, Exh. E, Village of Downers Grove Municipal Code at 8 (Section 1.15.1). These are questions of local-ordinance enforcement and of state-court equal treatment of like-situated ordinance violators, none of which is within the experience of federal courts. Relinquishment of supplemental jurisdiction is proper here.

## IV. Conclusion

For the reasons discussed above, the Court denies Leibundguth's request for a stay of the enforcement of the Sign Ordinance during post-trial motions and pending appeal [R. 54]. The Court also dismisses the state law claims in the Village's counterclaim without prejudice.


ENTERED:


    s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge


DATE: February 4, 2016