ROBERT PETERSON and LEIBUNDGUTH )
STORAGE & VAN SERVICE, INC., )
)
       Plaintiffs, )    No. 14 C 09851
)
  v. )
)    Judge Edmond E. Chang
VILLAGE OF DOWNERS GROVE, )
ILLINOIS, )
)
       Defendant. )

## MEMORANDUM OPINION AND ORDER

On December 14, 2015, the Court issued an order granting the Village of Downers Grove, Illinois's motion for summary judgment and denying Leibundguth Storage & Van Service, Inc.'s cross motion for summary judgment.[1] R. 51, 12/14/15 Op.[2] The Court formally entered a Rule 54(b) judgment in the Village's favor on all of Leibundguth's claims on January 7, 2016. R. 52; R. 53. Currently before the Court is Leibundguth's motion to alter or amend judgment under Federal Rule of Civil Procedure 59(e). R. 63, Mot. to Amend J.; R. 64, Pl.'s Amend J. Br. For the reasons discussed below, Leibundguth's motion is denied.

## I. Background

The factual background and procedural history of this case are set forth in detail in the opinion granting the Village's motion for summary judgment. 12/14/15 Op. (For convenience, the Court will refer to that opinion as the "December 2015

---

[1]This Court has subject matter jurisdiction over this case under 28 U.S.C. § 1331.
[2]Citations to the record are indicated as "R." followed by the docket number.

Opinion.") There is no need to repeat all of those details here, so this Opinion sets out only those facts relevant to deciding the current motion.

In December 2014, Leibundguth sued the Village of Downers Grove, alleging that several sections of the Village's Sign Ordinance violated the First Amendment. R. 1, Compl.; R. 10, Am. Compl. Leibundguth challenged the provision prohibiting painted signs, R. 10, Exh. A, Sign Ord. § 9.020(P), the provision prohibiting wall signs that face only the BNSF Railway and not a public roadway or drivable right-of-way, *id.* § 9.050(C), and the provisions limiting the size and number of wall signs that a business or property owner may display along a public roadway or drivable right-of-way, *id.* § 9.050(A) (maximum sign area); *id.* § 9.050(C)(1) (number of wall signs). The Village answered Leibundguth's complaint and filed a counterclaim. R. 12, Ans. and Countercl. In its counterclaim, the Village asked the Court to declare the challenged provisions of the Sign Ordinance constitutional, to order Leibundguth to bring all non-conforming signs into compliance with the Ordinance, and to award the Village fines if Leibundguth failed to bring its signs into timely compliance. *Id.* at 32-36.

After discovery had closed, the Village filed a motion for summary judgment, in which it asked for summary judgment in its favor on all counts in Leibundguth's amended complaint. R. 35, Def.'s Mot. Summ. J.; R. 36, Def.'s Summ. J. Br. at 20. The Village did not ask for summary judgment on its counterclaim. Leibundguth then filed its own cross motion for summary judgment, in which it too asked for

summary judgment in its favor on all counts in its complaint. R. 39, Pl.'s Mot. Summ. J. at 4-5. Again, the Village's counterclaim was not discussed.

On December 14, 2015, the Court granted the Village summary judgment on all counts in Leibundguth's amended complaint. 12/14/15 Op. In analyzing the various claims, the Court first held that the Sign Ordinance's prohibition on painted signs, R. 36, Exh. B, Am. Sign Ord. § 9.020(P), was content-neutral and constituted a valid time, place or manner restriction. 12/14/15 Op. at 11-21.

Second, the Court concluded that Leibundguth's challenge to the Ordinance's prohibition on wall signs that face only the commuter railway, and not a public roadway or drivable right-of-way, R. 36, Exh. A, Sign Ord. § 9.050(C)(1), was moot because the Village had amended that section of the Sign Ordinance. 12/14/15 Op. at 21-25. When originally enacted, the Sign Ordinance prohibited buildings next to the Metra railroad (like Leibundguth's) from displaying a wall sign that faced the railroad but not a public roadway or drivable right-of-way. Sign Ord. § 9.050(C)(1). But in July 2015, after Leibundguth filed suit, the Village amended § 9.050(C) to include a new provision allowing "lots with frontage along the BNSF railroad" to display "one additional wall sign" facing the railroad, provided the sign did "not exceed 1.5 square feet per linear foot of tenant frontage along the BNSF railroad right-of-way." R. 36, Exh. B, Am. Sign Ord. § 9.050(C)(5). Because Leibundguth was no longer precluded from displaying a wall sign that faced only the railroad, which is all that Leibundguth had challenged in its amended complaint, the Court decided that this claim was moot. 12/14/15 Op. at 22-24.

Third, the Court held that the Sign Ordinance's restrictions on the size and number of wall signs that may be displayed on a given lot, R. 36, Exh. A, Sign Ord. § 9.050(A) (size provision) and § 9.050(C)(1) (number provision), applied only to commercial signs, and therefore, were subject to intermediate scrutiny under *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557 (1980). 12/14/15 Op. at 25-26. In reaching this conclusion, the Court noted that the Village adopted this position—that these restrictions apply only to commercial speech—in its motion-to-dismiss briefing, *id.* at 26; R. 25, Def.'s Mot. to Dismiss Reply Br. at 4, and that the parties did not dispute this point in their summary-judgment-briefing, 12/14/15 Op. at 26; Def.'s Summ. J. Br. at 15; R. 41, Pl.'s Summ. J. Br. at 5. The Court also reviewed the Supreme Court's recent decision in *Reed v. Town of Gilbert*, 135 S. Ct. 2218 (2015), but concluded that because the Supreme Court did not specifically overrule *Central Hudson* in *Reed*, *Central Hudson* still applied to restrictions targeting commercial speech. 12/14/15 Op. at 27-29. Applying the test articulated in *Central Hudson*, the Court found that the Ordinance's restrictions on the size and number of wall signs that may be displayed along a public roadway or drivable right-of-way were narrowly tailored to advance the Village's interest in aesthetics and constituted valid restrictions on commercial speech. *Id.* at 29-37.

Finally, the Court addressed Leibundguth's facial challenge to these same size and number restrictions in § 9.050(A) and (C)(1). Relying on the overbreadth doctrine, Leibundguth asserted that even if the restrictions could be constitutionally applied to it, the restrictions could conceivably be applied unconstitutionally to

others, and thus, had to be found invalid in all applications. Pl.'s Summ. J. Br. at 16. The Court, however, rejected Leibundguth's overbreadth attack:because the parties agreed that the size and number restrictions in § 9.050(A) and (C) applied only to commercial speech, a non-commercial litigant could never be subject to these provisions, which meant there was no overbreadth challenge to be had. 12/14/15 Op. at 38-40.

Having reached these conclusions, the Court granted summary judgment in favor of the Village on all counts of Leibundguth's complaint. *Id.* at 40. The December 2015 Opinion did not, however, specifically address the Village's counterclaim, and in particular, did not address the state-law issues raised in the counterclaim, which neither party had briefed. At the status hearing immediately following the Court's issuance of its December 2015 Opinion, the Court entered a Rule 54(b) judgment on Leibundguth's claims, all of which were federal claims, and on the federal portion of the Village's counterclaim (that is, the portion asking for a declaration of constitutionality). R. 52 (Jan. 7, 2016 Minute Entry). The Court then ordered the parties to file position papers addressing whether the Court should relinquish supplemental jurisdiction over the remaining issues in the Village's counterclaim, all of which were based on state law. *Id.*

The parties filed their initial position papers on January 21, 2016, R. 56; R. 57; they filed their responses a week later, R. 59; R. 60. Leibundguth urged the Court to relinquish supplemental jurisdiction over the state-law issues, R. 56; the Village urged the Court to retain jurisdiction, R. 57. On the same day the parties

submitted their initial position papers, January 21, Leibundguth also filed a motion under Federal Rule of Civil Procedure 62, asking the Court to stay enforcement of the Sign Ordinance during any post-judgment motions and while on appeal. R. 54, Pl.'s Stay Mot.; R. 55, Pl.'s Stay Br. On February 3, 2016, a day before the Court issued its ruling on the jurisdiction issue and on Leibundguth's Rule 62 motion, but less than 28 days after the Court had entered judgment on the parties' motions for summary judgment, Leibundguth filed this Rule 59(e) motion to alter or amend the December 2015 Opinion. R. 63, Pl.'s Mot. to Amend J.; R. 64, Pl.'s Amend J. Br. The next day, the Court issued an order relinquishing supplemental jurisdiction over the Village's remaining counterclaims and denying Leibundguth's motion to stay enforcement of the Sign Ordinance. R. 67, 02/04/16 Op. So all that remains is Leibundguth's motion to alter or amend judgment.

## II. Legal Standard

Under Federal Rule of Civil Procedure 59(e), a party may, within 28 days of the entry of judgment, move to alter or amend that judgment. Fed. R. Civ. P. 59(e). The granting of a Rule 59(e) motion "is only proper when the movant presents newly discovered evidence that was not available at the time of trial" or when the movant "clearly establishes a manifest error of law or fact." *Burritt v. Ditlefsen*, 807 F.3d 239, 253 (7th Cir. 2015) (internal quotation marks and citation omitted); Fed. R. Civ. P. 59(e). The Seventh Circuit has made clear that Rule 59(e) is not to be used as a vehicle to "'advance arguments that could and should have been presented to the district court prior to the judgment,'" *Cincinnati Life Ins. Co. v. Beyrer*, 722

F.3d 939, 954 (7th Cir. 2013) (quoting *Bordelon v. Chi. Sch. Reform Bd. of Trs.*, 233 F.3d 524, 529 (7th Cir. 2000)), or to "rehash" arguments previously made and rejected, *Vesely v. Armslist LLC*, 762 F.3d 661, 666 (7th Cir. 2014); *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000). Rather, the Seventh Circuit has said that reconsideration is allowed only when a "significant change in [the] law has occurred," or "new facts have been discovered," or when a court has "misunderstood a party," "made a decision outside the adversarial issues presented to the court by the parties," or "made an error of apprehension (not of reasoning)." *Broaddus v. Shields*, 665 F.3d 846, 860 (7th Cir. 2011), overruled on other grounds by *Hill v. Tangherlini*, 724 F.3d 965, 967 n.1 (7th Cir. 2013); *see also Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990).

Because judgments are presumed final, reconsideration under Rule 59(e) is granted only when the moving party has shown that there is a compelling reason to set the judgment aside. *Bank of Waunakee*, 906 F.2d at 1191; *Hecker v. Deere & Co.*, 556 F.3d 575, 591 (7th Cir. 2009); *Solis v. Current Dev. Corp.*, 557 F.3d 772, 780 (7th Cir. 2009). If a party seeks reconsideration based on a "manifest error," it must show a "wholesale disregard, misapplication, or failure to recognize controlling precedent." *Oto*, 224 F.3d at 606.

### III. Analysis

### A. Challenge to Sections 9.050(A) and (C)

Leibundguth first attacks the Court's decisions on the Sign Ordinance's restrictions that limit the size and number of wall signs permitted on a single lot,

§ 9.050(A) and (C)(1). Pl.'s Amend J. Br. at 2. Section 9.050(A) limits the total sign area to "1.5 square feet per linear foot of tenant frontage," and § 9.050(C)(1) limits "[e]ach business or property owner" to "one wall sign per tenant frontage along a public roadway or drivable right-of-way." R. 36, Exh. A, Sign Ord. § 9.050(A) and § 9.050(C)(1). Leibundguth argues that the Court incorrectly held that these restrictions apply only to commercial signs, and therefore, only to commercial speech; according to Leibundguth, the restrictions apply to *all* signs and speech. *Id.* But in making this argument, Leibundguth disregards the fact that the Court's conclusion that § 9.050(A) and (C)(1) apply only to commercial signs was based on the parties' own arguments. Up until this point, both parties seemingly agreed that the restrictions in § 9.050 restrict only commercial speech. 12/14/15 Op. at 26. That is the position the Village took in its motion-to-dismiss briefing, *see id.*; R. 25, Def.'s Mot. to Dismiss Reply Br. at 4, and the position both parties took on summary judgment, Def.'s Summ. J. Br. at 15; Pl.'s Summ. J. Br. at 5.

Leibundguth now argues that "although [it] agrees that Section 9.050 applies to commercial speech, it has never claimed that Section 9.050 *only* applies to commercial signs." Pl.'s Amend J. Br. at 2 (emphasis in original). But a review of the record in this case refutes this. It is true, as Leibundguth points out, that nothing in § 9.050 specifically states that it is limited to commercial speech; it does not use the word "commercial" and it is entitled "Sign Regulations Generally." *Id.*; R. 36, Exh. A, Sign Ord. § 9.050. But on summary judgment, Leibundguth clearly asserted that the restrictions in § 9.050(A) and (C)(1) apply only to commercial

speech—it was implied in Leibundguth's responses to the Village's statement of facts, and it was explicit in Leibundguth's briefing.

Specifically, in the Village's Local Rule 56.1 Statement of Uncontested Material Facts, the Village stated:

> 7. Section 9.050 regulates commercial signs, (Ex. 2 § 9.050) and Section 9.050.A is a commercial sign size limitation. (Ex. 2, § 9.050.A). Section 9.050.A permits up to 1.5 sq. ft. of commercial signage per linear foot of tenant frontage, not to exceed collectively 300 sq. ft. per tenant. (Ex. 2, § 9.050.A).
>
> 8. Section 9.050.C is a limitation on the number of commercial wall signs permitted based upon the number of tenants having frontage along a public roadway or drivable right-of-way (Ex. 2, § 9.050.C.1).

R. 37, Def.'s Statement of Facts (DSOF) ¶¶ 7-8. Both of these statements show that the Village viewed the restrictions in § 9.050(A) and (C)(1) as restricting only commercial signs. Leibundguth, for its part, did *not* refute these statements. In both instances, Leibundguth responded that the statements were "Undisputed." R. 40, Pl.'s Resp. to DSOF ¶¶ 7-8. Leibundguth could have challenged the Village's position that § 9.050(A) and (C)(1) apply only to commercial signs; it did not. Instead, it took the same position as the Village: that the restrictions regulate commercial signs.

Leibundguth's summary judgment briefing is also crucial in making this point. Both Leibundguth and the Village agreed on summary judgment that § 9.050's restrictions should be analyzed under *Central Hudson Gas & Electric Corp. v. Public Service Commission of New York*, 447 U.S. 557 (1980), which only applies when a regulation restricts *commercial* speech. Pl.'s Summ. J. Br. at 5-6; Def.'s Summ. J. Br. at 15. *See also* R. 47, Pl.'s Summ. J. Reply Br. at 11 ("The

9

parties agree that the proper test in evaluating Leibundguth's First Amendment challenge to the size and number restrictions is the *Central Hudson* test[.]"). True, the Court held that *Central Hudson* applied to these restrictions at the motion-to-dismiss stage, R. 29, 04/27/15 Dismissal Op., a fact which the Village noted in its summary judgment briefing when addressing § 9.050, Def.'s Summ. J. Br. at 15. But remember, the Court reached that conclusion because the Village specifically asserted that the restrictions were commercial restrictions, *see* R. 25, Def.'s Mot. to Dismiss Reply Br. at 4 (stating that "only three specific commercial sign regulations prohibit [Leibundguth's] commercial signs"), and at that time, the Court was simply considering whether the complaint was sufficient to state a claim. If Leibundguth wished to challenge the applicability of *Central Hudson* to the restrictions in § 9.050 on summary judgment, it easily could have done so (or at a minimum, Leibundguth could have preserved the argument by making note of it in its briefing). But Leibundguth did no such thing. Instead, Leibundguth argued *only* that § 9.050(A) and (C)(1) failed under *Central Hudson*. Leibundguth never asserted that something other than *Central Hudson* applied or that the restrictions applied to more than just commercial signs. At this stage, it is too late.

It is worth noting that Leibundguth did attack the restrictions in § 9.050(A) and (C)(1) on summary judgment under the overbreadth doctrine. Pl.'s Summ. J. Br. at 16. Leibundguth argued that even if the Village's restrictions in § 9.050(A) and (C)(1) "might be constitutionally applied to Leibundguth" (that is, might pass muster as restrictions on commercial speech), the restrictions may nonetheless

"conceivably be applied unconstitutionally to others," (that is, to noncommercial speakers) and thus, must be deemed "invalid" in "all [their] applications." *Id.* Out of context, this argument could be viewed as supporting Leibundguth's contention that it never asserted that § 9.050 applies *only* to commercial signs. But when Leibundguth's argument is read in its entirety, it is clear that that is not the case. In making this argument, Leibundguth relied not only on § 9.050(A) and (C)(1), but also on an entirely different section of the Ordinance, § 9.030, which Leibundguth identified as the non-commercial counterpart to § 9.050's restrictions on commercial signs. Section 9.030 exempts certain signs from needing a permit (technically, all signs require a permit under the Ordinance unless exempted, Sign Ord. § 9.080) depending on the content of the sign and whether the sign meets the specific restrictions described in that section for those types of signs. Pl.'s Summ. J. Br. at 18-20; Pl.'s Summ. J. Reply Br. at 16-17; R. 36, Exh. A, Sign Ord. § 9.030. Relying on these two sections, Leibundguth argued that when the two sections are viewed together—§ 9.030 and § 9.050—it is clear that the Ordinance's size and number restrictions violate the overbreadth doctrine because they impose restrictions on commercial speech (under § 9.050(A) and (C)(1)) that are more favorable than some of the restrictions they impose on non-commercial speech (under § 9.030), and because they treat certain non-commercial speech better than other non-commercial speech. Pl.'s Summ. J. Br. at 18-20; Pl.'s Summ. J. Reply Br. at 17. Although the Court need not rehash its discussion on this issue, the important point here is that even when making its overbreadth argument, Leibundguth did not once suggest

that the restrictions in § 9.050(A) and (C)(1) applied to anything other than commercial signs.

What Leibundguth is attempting to do here is challenge, for the first time, the scope of § 9.050; and more specifically, the Village's contention that § 9.050(A) and (C)(1) apply strictly to commercial signs. A motion under Rule 59(e) is not the appropriate vehicle for a first-time challenge like this. *Cincinnati Life Ins. Co.*, 722 F.3d at 954 (Rule 59(e) cannot be used to "advance arguments that could and should have been presented to the district court prior to the judgment."). Leibundguth could have raised this argument on summary judgment. It could have challenged whether § 9.050(A) and (C) apply only to commercial signs (as opposed to all signs generally) in its response to the Village's Local Rule 56.1 Statement and in its briefing, or at the very least attempted to preserve the argument if it thought the Court had already ruled that *Central Hudson* applied. It did not. It cannot now, on a Rule 59(e) motion, raise this argument for the first time. *Id.* Leibundguth has failed to show that reconsideration is warranted on this ground.

Leibundguth makes two additional arguments related to the restrictions in § 9.050(A) and (C)(1). First, Leibundguth argues that the Court incorrectly held that the Village provided sufficient evidence to show that its restrictions in § 9.050(A) and (C)(1) advance the Village's interest in "improving aesthetics." Pl.'s Amend J. Br. at 11-14. Leibundguth argues that "the Village's 'evidence' regarding aesthetics"—that is, the pictures the Village took of commercial signs in Downers Grove and nearby towns, and the conversations between the Village and residents

regarding the Sign Ordinance—"consist[s] of nothing more than 'speculation or conjecture,'" and does nothing to show the "*specific* [aesthetic] end the Village is seeking to achieve." *Id.* at 11-12 (emphasis in original). Leibundguth further asserts that the Village has advanced "conflicting policies"; "it has argued that restricting the size and number of wall signs improves aesthetics, but [it] … has also asserted that granting Art Van Furniture significantly *more* and *larger* wall signs than the Ordinance allows would improve aesthetics." *Id.* at 12 (emphases in original).

Leibundguth's contention is problematic for a couple of reasons. The first is that Leibundguth raised these same points during summary judgment, and is now merely reemphasizing issues it thinks the Court got wrong. Pl.'s Summ. J. Br. at 12-14 (discussing how "mere speculation or conjecture" is insufficient, and how the Village has provided evidence only of the process it undertook); *id.* at 12 (discussing exemptions given to Art Van Furniture); Pl.'s Summ. J. Reply Br. at 15-16 (same). *See* 12/14/15 Op. at 34-37 (rejecting these same arguments). It is well settled that Rule 59(e) cannot be used to rehash old arguments. *Vesely*, 762 F.3d at 666; *Oto*, 224 F.3d at 606.

The second problem for Leibundguth is that it is seeking to impose a more rigorous standard than is required under *Central Hudson*. Leibundguth asserts that the Village should have been required to identify the *specific* aesthetic interest it was seeking to advance through its restrictions. But a general interest in aesthetics is recognized as a significant governmental interest. *Members of the City Council of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 805-06 (1984) ("[M]unicipalities

have a weighty, essentially esthetic interest in proscribing intrusive and unpleasant formats for expression."). And Leibundguth fails to cite to anything that would indicate that a more specific breakdown of that aesthetic interest is required for it to pass muster under *Central Hudson*. Now, it is true that the Village must provide some evidence to support its asserted interest in aesthetics, and that the evidence must consist of something more than speculation or conjecture. *Greater New Orleans Broad. Ass'n, Inc. v. United States*, 527 U.S. 173, 188 (1999); *Edenfield v. Fane*, 507 U.S. 761, 770-71 (1993). But the evidence need not be overwhelming; it can consist of "history, consensus, and 'simple common sense.'" *Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 555 (2001); *Lavey v. City of Two Rivers*, 171 F.3d 1110, 1116 (7th Cir. 1999) (explaining that City did not have to produce a voluminous record when common-sense restrictions were involved). Despite Leibundguth's contention to the contrary, the Court remains convinced that the Village has met this burden in this case. The Village clearly studied the signs around town, as evidenced by the hundreds of pictures Village officials took of commercial signs in town. R. 37-4, Exh. 1D at 267-348; R. 37-1, Exh. 1A at 44 (Village Workshop Meeting Minutes 05/11/04: noting that the Plan Commission and Economic Development Commission have looked at signage within the context of "aesthetics"). Village staff members also met regularly to discuss the town's signage and policies, R. 37-1, Exh. 1A at 57 (Plan Commission Meeting Minutes 02/21/05: noting that "[t]he Sign Subcommittee met almost weekly for 17 weeks for 2-3 hour meetings"), and asked for resident input on all suggested amendments along the way, *e.g.*,

R. 37-1, Exh. 1A at 55-91 (minutes from Plan Commission Meetings on 02/21/05 and 02/28/05 where all proposed amendments to the Sign Ordinance were discussed and public input was sought). *See also* 12/14/15 Op. at 34; DSOF ¶¶ 13-14. These actions show that the Village did not rely on mere speculation when deciding what restrictions to impose. What's more, just as with billboards, "[i]t is not speculative to recognize that [large wall signs] by their very nature, wherever located and however constructed, can be perceived as an 'esthetic harm,'" particularly when they are numerous. *Metromedia, Inc. v. City of San Diego*, 453 U.S. 490, 510 (1981). This is common sense. The Village has provided enough evidence to support its aesthetic interest. Leibundguth has failed to provide any new evidence or to cite to any case law that persuades the Court that anything more is required, or that the Court committed a manifest error. *Oto*, 224 F.3d at 606 (manifest error of law requires a showing of wholesale disregard or misapplication of the law, or failure to recognize controlling precedent).

Leibundguth's next and final argument on the restrictions in § 9.050 is that the Court wrongly held that the Village had established that its size and number restrictions are narrowly tailored to advance the Village's interest in aesthetics. Pl.'s Amend J. Br. at 14-15. In particular, Leibundguth argues that the restrictions are not narrowly tailored because "the Village has provided exemptions to the size and number restrictions to some businesses and the Ordinance allows other kind[s] of signs [such as window signs] without the same size and number restrictions." *Id.* at 14. But this assertion is once again a mere rehash of an argument previously

made and rejected. Pl.'s Summ. J. Br. at 11-13, 8-9; 12/14/15 Op. at 35-36, 36 n.13. It too fails to meet the rigorous standard imposed under Rule 59(e) for reconsideration to be warranted. *Vesely*, 762 F.3d at 666; *Oto*, 224 F.3d at 606.

## B. Challenge to Section 9.020(P)

Next, Leibundguth attacks the Court's decision on the Ordinance's restriction on painted signs in § 9.020(P). R. 36, Exh. B, Am. Sign Ord. § 9.020(P) (banning "any sign painted directly on a wall, roof, or fence"). Leibundguth asserts that the Court ignored the fact that § 9.020(P)'s ban on painted signs excludes flags and murals, making § 9.020(P) a content-based restriction that should have been subject to strict scrutiny. Pl.'s Amend J. Br. at 3-4. As support, Leibundguth points to a 2015 Village Staff Report that contains a statement to that effect.[3] *Id.* But contrary to Leibundguth's contention, the Court did *not* ignore the fact that a Village Staff Report, authored by the Village's Planning Manager, Stanley Popovich, stated that purely "decorative" flags and murals are not subject to the painted sign ban. 12/14/15 Op. at 15 n.6; R. 36, Exh. C, 2015 Staff Report at 3. Leibundguth brought this point up during summary judgment, Pl.'s Summ. J. Br. at 2-5, and the Court

---

[3]In its reply brief, Leibundguth also cites the Village's response to Leibundguth's Local Rule 56.1 Statement of Undisputed Material Facts, suggesting that there too the parties agreed that flags and murals painted on buildings are exempt from the painted sign ban. Pl.'s Amend. J. Reply Br. 8 (citing R. 46, Def.'s Resp. to Pl.'s Statement of Material Facts (PSOF) ¶ 33). But that paragraph merely refers to the same 2015 Staff Report Leibundguth otherwise cites: "33. The Village staff report accompanying [the Sign] Ordinance … states: 'There are instances of flags and murals painted on buildings and these are permitted by the code on the basis that they are decorative, and do not convey constitutionally protected commercial or non-commercial speech.' (Def. Exh. 4, Report of Plan Commission, July 6, 2015, at 3.)[.]" *Id.* In its response, the Village simply agreed that the Staff Report contains that statement: "Undisputed that this statement is included as part of the overall report referenced." *Id.* So, although it might appear that Leibundguth cites to more than just the Staff Report to support its argument here, Leibundguth does not.

16

specifically addressed it in the December 2015 Opinion, 12/14/15 Op. at 15 n.6. The Court was not then (and is still not) persuaded that Popovich's statement in the Staff Report turns the Sign Ordinance's ban on painted signs into a content-based restriction. As explained in detail in the prior Opinion, the actual text of the Sign Ordinance does not exempt any signs (decorative or otherwise) from the restriction, and the Village conceded on summary judgment that any flag or mural that meets the definition of a "sign" is subject to the painted sign restriction, despite Popovich's statement to the contrary. *Id.*; R. 45, Def.'s Summ. J. Reply and Resp. Br. at 1. Given the Village's concession and the broad definition of "sign" adopted by the Village in its Municipal Code, R. 40, Exh. E, Village Muni. Code § 15.220, the Court held that the restriction in § 9.020(P) was content-neutral. 12/14/15 Op. at 15 n.6. In its current motion, Leibundguth does not raise any new arguments or point to any new evidence that convinces the Court that it erred in reaching this conclusion.

Leibundguth does try to bolster its argument by attaching to its Rule 59(e) brief a photo of a restaurant in Downers Grove that has a painted American flag on the side of its building, as well as a picture of the restaurant that was located there previously, which had an Irish flag painted on the side of its building. R. 64, Exh. A. Leibundguth argues that these pictures similarly show that the Village exempts flags and murals from § 9.020(P)'s ban. Pl.'s Amend J .Br. at 3-4. These photographs, however, were not in the record at summary judgment, and Leibundguth fails to provide a valid explanation for why they could not have been produced earlier. Both photographs are dated. R. 64, Exh. A. The photograph of the

American restaurant appears to be from September 2015, and the photograph of the Irish restaurant from September 2012. *Id.* Leibundguth did not file its reply brief in support of its motion for summary judgment until October 2015. Pl.'s Summ. J. Reply Br. These pictures could easily have been included with that briefing. Leibundguth implies that it could not have attached these photographs at that time because the Staff Report was issued after discovery had closed, and therefore, Leibundguth was not able to take discovery on this point during summary judgment. Pl.'s Amend J. Br. at 4 n.1. But Leibundguth never objected to the introduction of the Staff Report, or to the Village's reliance on it, during summary judgment. If Leibundguth had a problem with the Staff Report it should have voiced its concern. The same holds true for any additional discovery; if Leibundguth wanted to take additional discovery after the Staff Report came to light, it should have asked the Court to do so. We are now at the motion to vacate stage; Leibundguth's decision to wait to raise its concerns until now comes too late. *Salas v. Wis. Dep't of Corr.*, 493 F.3d 913, 924 (7th Cir. 2007); *Witte v. Wis. Dep't of Corr.*, 434 F.3d 1031, 1038 (7th Cir. 2006) (recognizing that a party forfeits any argument it fails to raise in a brief opposing summary judgment). These photos do not present new evidence that can properly be considered under Rule 59(e), and they do not show that reconsideration is appropriate. *Cincinnati Life Ins. Co.*, 722 F.3d at 954 (Rule 59(e) is not to be used to "advance arguments that could and should have been presented to the district court prior to the judgment[.]").

Leibundguth separately argues that the Court wrongly held that the Village satisfied is burden to show that the Ordinance's ban on painted signs is narrowly tailored to advance the Village's asserted interest in aesthetics. Pl.'s Amend J. Br. at 4-9. Specifically, Leibundguth argues that the Village has not provided enough evidence to support its aesthetic interest, and that it has not shown that its painted sign ban is narrowly tailored to achieve that interest. *Id.* But once again, Leibundguth has failed to present any new, compelling evidence or to show that the Court committed a manifest error. To support its aesthetic interest, the Village provided copies of hundreds of photographs its staff members took of signs around town before it passed the Sign Ordinance, R. 37-4, Exh. 1D at 267-348; it also included a copy of the 2015 Staff Report previously discussed, which describes in detail the Village's concerns with painted wall signs, R. 36, Exh. C, 2015 Staff Report at 3-5. Leibundguth takes issue with the fact that nothing connects the photographs with the Village's asserted interest in aesthetics, and with the fact that the 2015 Staff Report provides no support for its assertions that painted signs require on-going maintenance, are subject to water damage, and are hard to remove. *Id.* at 6-7.

But these arguments do not establish that reconsideration is warranted; they simply highlight Leibundguth's disagreement with the Court's conclusion. Mere disagreement is not sufficient to establish manifest error or to entitle a party to reconsideration. *Seng-Tiong Ho v. Taflove*, 648 F.3d 489, 505 (7th Cir. 2011); *Oto*, 224 F.3d at 606; *see also King v. Cross*, 2014 WL 1304320, at *2 (N.D. Ill. Mar. 28,

2014). As the Court explained in the December 2015 Opinion, this evidence is enough to show that the Village did not "blindly invoke" its stated concern over aesthetics, which is all that the Village is required to show. *Weinberg v. City of Chi.*, 310 F.3d 1029, 1038 (7th Cir. 2002). The Village's photographs show that it took the time to study the signs that were in use in the Village before implementing any new sign regulations, which inherently includes consideration of the overall aesthetic appeal of those signs. And the 2015 Staff Report shows that the Village carefully considered the effects of painted signs before fully banning them. 12/14/15 Op. at 17-18. It is perfectly reasonable to believe that Mr. Popovich, the Village's Planning Manager, has sufficient expertise to draw the conclusions that he did in the Staff Report. What's more, Leibundguth's painted wall sign also provides additional proof that the Village's concerns are real; the photo of Leibundguth's painted wall sign on the back of its building, which the Village provided on summary judgment, shows the exact fading and chipping problems discussed by the Staff Report. R. 36, Exh. D at 7-9. Leibundguth responds that its painted sign looks the way it does because it has not "touched [it] up" because of this lawsuit. Pl.'s Amend J. Br. at 9. But that just goes to show that the Staff Report is correct in that painted signs require ongoing maintenance or are otherwise likely to deteriorate, and that they are prone to fading and chipping. R. 36, Exh. C, 2015 Staff Report at 3-4. This evidence remains sufficient to meet the Village's burden to show that its painted sign ban advances its interest in town aesthetics. The Village need only show that it did not "blindly invoke" its aesthetic concerns; it has done that.[4] While Leibundguth may

---

[4]Leibundguth again points out that discovery had closed in this case before the 2015

disagree with the Court's conclusion, as noted above, a Rule 59(e) motion is not the proper vehicle to air that difference of opinion. *Seng-Tiong Ho*, 648 F.3d at 505; *Oto*, 224 F.3d at 606.

Leibundguth's assertion that the painted sign ban is not narrowly tailored to advance the Village's aesthetic interest suffers from a similar problem. Leibundguth argues that the "deliberation and dialogue" between the Village and its residents that occurred before the original Sign Ordinance was passed does not support the conclusion that the painted sign ban is narrowly tailored for two reasons: because painted signs were never specifically discussed at that time, and because the discussions occurred in advance of the passing of the original Sign Ordinance, which still allowed painted signs in certain downtown business zones. Pl.'s Amend J. Br. at 7-8. Leibundguth points out that almost no deliberation or dialogue occurred before the passing of the amended (and the now current) ordinance, which completely bans painted signs. *Id.* at 8.

Although Leibundguth frames this argument as one attacking whether the painted sign ban is narrowly tailored, it really attacks (again) whether the Village's

---

Staff Report came to light and before the Village decided to amend § 9.020(P) to ban painted signs in all of Downers Grove (previously, it had allowed painted signs in the Downtown Business, Downtown Transitional, and Fairview Districts). Pl.'s Amend. J. Br. at 5 n.3, 6. According to Leibundguth, without discovery, "there is no way to know whether the [2015 Staff] Report accurately reflects real concerns about painted signs." *Id.* at 6. But again, Leibundguth could have moved to reopen discovery on this issue as soon as it became aware of the Staff Report and the amendment, but it chose not to. *Id.* Leibundguth must live with that decision. As the Court has already explained both in this Opinion and in its prior opinions, this argument comes too late; it has been forfeited. Leibundguth also has yet to explain what discovery it would have taken related to the Staff Report. *See* 02/04/16 Op. at 11 (explaining when Leibundguth raised this same argument in its motion requesting a stay that Leibundguth should have identified what discovery it would have taken).

asserted aesthetic interest is genuine, as that is where the Court discussed the Village's "deliberation and dialogue." 12/14/15 Op. at 17. Leibundguth is correct in that the Village, once upon a time, did allow painted signs in certain districts, R. 36, Exh. A, Sign Ord. § 9.020(P), but that is no longer the case, R. 36, Exh. B, Am. Sign Ord. § 9.020(P), which makes any argument along these lines moot. Leibundguth also failed to raise this issue during summary judgment, something it certainly could have done. *Cincinnati Life Ins. Co.*, 722 F.3d at 954 (Rule 59(e) is not to be used to "advance arguments that could and should have been presented to the district court prior to the judgment."). In addition, that painted wall signs may not have been explicitly discussed between the Village and its residents does not change the fact that the Village took the time to study the town's signs prior to implementing any ban on painted signs (or any other restrictions for that matter), and that it gave residents a chance to voice any concerns they may have had prior to the new restrictions taking effect, including the restriction on painted signs. This "deliberation and dialogue" was also just one piece of evidence (and not the primary piece) that the Court relied on in finding that the Village's asserted aesthetic interest was real and that its painted sign ban narrowly tailored. 12/14/15 Op. at 17. The other piece of evidence was the 2015 Staff Report, which the Court has already discussed and which addresses in detail the problems with painted signs. This argument is rejected.

Leibundguth also asserts that the painted sign ban is not narrowly tailored because it is underinclusive: it still allows flags and murals to be painted on walls.

This is again an attempt by Leibundguth to rehash an argument previously made. Leibundguth made this same argument on summary judgment, Pl.'s Summ. J. Reply Br. at 8, and the Court specifically addressed it in its December 2015 Opinion, 12/14/15 Op. at 15 n.6. Leibundguth is not entitled to reconsideration simply because it does not like the result the Court reached.[5]

## C. Challenge to Amended Section 9.050(C)(5)

Finally, Leibundguth contends that the Court should not have held that Leibundguth's challenge to the Sign Ordinance's ban on signs facing only the BNSF railway (Count 3 of the Amended Complaint) was moot. Pl.'s Amend J. Br. at 10. According to Leibundguth, the December 2015 Opinion "did not address Leibundguth's challenge to Section 9.050(C)'s limits [to] the size of wall signs along the BNSF railroad, which were properly pleaded as well as raised in Leibundguth's motion for summary judgment."[6] Pl.'s Amend J. Reply Br. at 2. Leibundguth is correct on this point. Technically, if Leibundguth had prevailed on striking down the ban on painted wall signs in § 9.020(P), and also won on the size and number

---

[5]It is also worth emphasizing that "[t]he 'requirement of narrow tailoring is satisfied so long as the regulation promotes a substantial government interest that would be achieved less effectively absent the regulation.'" *Graff v. City of Chi.*, 9 F.3d 1309, 1321 (7th Cir. 1993) (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 799 (1989)). Here, the painted sign ban surely promotes the Village's aesthetic interest: it alleviates many of the concerns regarding maintenance and building wear-and-tear that the Village emphasized in its 2015 Staff Report. Absent a ban like the one imposed in § 9.020(P), these concerns would not be addressed as effectively. The Court remains unpersuaded that its holding regarding the Sign Ordinance's painted sign ban was incorrect.

[6]Leibundguth did not specifically challenge the size restriction in § 9.050(C)(5) in its amended complaint, R. 10, Am. Compl., no doubt because the amendment came out after Leibundguth had already filed that complaint. But it would certainly have been better if Leibundguth had asked for leave to amend its complaint again after the Village revised its restriction on wall signs facing just the BNSF railroad. That would have given Leibundguth a chance to properly raise any relevant arguments in its complaint against this amendment.

restrictions imposed in § 9.050(A) and (C)(1), then it is possible that Leibundguth could still be found in violation of the Ordinance under the revised § 9.050(C)(5). That section allows "lots with frontage along the BNSF railroad" to display "one additional wall sign" facing the railroad, provided the sign does "not exceed 1.5 square feet per linear foot of tenant frontage along the BNSF railroad right-of-way." R. 36, Exh. B, Am. Sign Ord. § 9.050(C)(5). Neither party disputes that the size of Leibundguth's railway-facing sign exceeds § 9.050(C)(5)'s size limit. R. 46, Def.'s Resp. to Pl.'s Statement of Material Facts (PSOF) ¶ 8. So, Leibundguth is right in that for Article III purposes, this claim is not moot, because even if Leibundguth won summary judgment on the remainder of its claims, it could still be found in violation of § 9.050(C)(5). The Court will revise its judgment to reflect that Leibundguth's claim related to § 9.050(C)(5)'s size restriction is not moot.

That said, Leibundguth has still not shown that it is entitled to summary judgment on this claim. The size restriction imposed under § 9.050(C)(5) is exactly the same size restriction imposed under § 9.050(A) for wall signs that face a public roadway or drivable right-of-way. Both may not exceed 1.5 square feet per linear foot of tenant frontage.[7] R. 36, Exh. A, Sign Ord. § 9.050(A); R. 36, Exh. B, Am. Sign Ord. § 9.050(C)(5). So, for the same reasons that the size restriction in § 9.050(A) is constitutional, so too is the size restriction in § 9.050(C)(5). In challenging § 9.050(C)(5), Leibundguth does not raise any new arguments or present any new

---

[7]Section 9.050(A) also includes an exception for buildings set back more than 300 feet from the abutting roadway or public right-of-way. R. 36, Exh. A, Sign. Ord. § 9.050(A). But that restriction has never been at issue because Leibundguth's building is not set that far back.

evidence. Instead, Leibundguth merely asserts that the Court should hold that the size limitation for signs facing the BNSF railway is "unconstitutional for the same reasons that Section 9.050(A) [sic] size restrictions are unconstitutional." Pl.'s Amend J. Br. at 10. Because Leibundguth has not shown that the Court committed a manifest error in finding that § 9.050(A)'s size restriction is constitutional, it has likewise failed to show that § 9.050(C)(5)'s restriction should be found unconstitutional. Accordingly, while the Court will revise its judgment to reflect that Leibundguth's claim under revised § 9.050(C)(5) is not moot for Article III purposes, reconsideration of the Court's decision to grant the Village summary judgment on this Count is not warranted.

## IV. Conclusion

For the reasons discussed above, Leibundguth's Rule 59(e) motion to alter or amend the December 2015 Opinion [R. 63] is denied. But the Court will revise its judgment to reflect the fact that Leibundguth's challenge to § 9.050(C)(5)'s size restriction is not moot for Article III purposes, but that its claim is still dismissed for the same reasons Leibundguth's challenge to the other size restriction in § 9.050(A) was dismissed.

ENTERED:


      s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: June 29, 2016